# M. Valeria Witman and Harrison T. Witman *v.* The City of Reading, Appellant.

*Municipal claims—Front foot rule of assessment.*

No properties can be assessed for the cost of a sewer except those that abut on the line of it.

Hence, when an ordinance passed by the councils of the city of Reading, a city of the third class, divided the city into sewer districts, and provided that when in any of the said districts, main sewers shall be used as local sewers, such part of the cost of those main sewers which may also serve for local sewers, as well as the cost of all lateral or branch sewers, "shall be assessed on the properties abutting thereon by an equal assessment by the foot front rule, which rate per foot shall be ascertained by dividing the total cost and expense of construction of the sewers in any district, less the excess cost of any main sewer over and above the portion of the cost and expense required for local sewerage, by the total number of feet front of property in said district, the quotient being the price per foot," it was *held* that the assessment was illegal as to the excess beyond what any particular property would have been charged for the sewer in front of it.

*It seems* that the injunction should have been confined to collecting the excess. "While the foot front rule of assessment, it is true, does not express a principle of taxation, but merely a convenient method, yet its foundation is not in uniformity of value, but in uniformity of benefit." By Mr. Justice MITCHELL.

Hence also it was held to be error to enjoin the collection of the whole assessment, because of the application of the foot front rule.

Argued March 7, 1895.   Appeal No. 339, July T., 1895, by defendant, from a decree of C. P. of Berks Co., No. 600, Equity Docket, 1894, enjoining the defendant from collecting assessment, upon municipal claim.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

The facts appear from the following opinion of McPHERSON, J., who specially presided:

"This case was heard by the court under the recent equity

rules.   From  the  pleadings,  the  agreements  and  admissions  of
the  parties  and  the  documentary  evidence  offered,  we  find  the
following facts :

" 1.  The plaintiffs, who are husband and wife, are citizens of
Reading, and  since  January 1, 1884,  Mrs.  Witman  has  been
and is now the owner in fee of a building lot in that city, situ-
ated on the northwest corner of  Sixth and Laurel  streets, and
bounded as follows :  On the east by Sixth  street, on the south
by Laurel street, on the west by a ten feet wide alley, and on
the north by property of Fay ;  her lot having a front of 23 feet
and a depth of 110 feet.

" 2.  The city of  Reading  is a city of  the  third  class  under
the laws of the commonwealth of Pennsylvania.

" 3.  By ordinance of its councils approved  March 27, 1893,
the said city was divided into eight sewer districts for house
sewerage purposes.   Mrs. Witman's property is situated in the
First District, which comprises ' all that part of the city bounded
on the north by the northern  building  line of  Penn  street be-
tween the western  city  line  and  the  center  line  of  Seventh
street and by the northern  building line of  Washington  street
between the center line of Seventh street and the eastern build-
ing line of Ninth  street, on  the east by  the  eastern  building
line of Ninth street, and on the south and west by the city line.'
The  said  ordinance further  provides,  that  when  in  any  of  the
said districts main sewers shall be used as local sewers, such
part of  the cost of  those main sewers which may also serve for
local sewers, as well as the cost of all lateral or branch sewers,
' shall be assessed  on the properties  abutting thereon by an
equal  assessment  by the foot front rule, which  rate per foot
shall be ascertained by dividing the total cost and expense of
construction of the sewers in any district, less the excess cost
of any main sewer over and above the portion of the cost and
expense required for local sewerage, by the total number of
feet front of property in said district, the quotient being the
price per foot.'

" 4.  The said ordinance also provides, that, ' whenever councils
direct the construction of house sewers in any district, they
shall also provide for the construction of proper house connec-
tions leading from the main or lateral or branch sewer to the
inner curb line of the street or highway, the cost and expense
of which shall be assessed upon the lots or parcels of land for

the accommodation of which such connecting branches or pipes may be constructed; and the city engineer shall be directed to make an estimate of the cost and expense of proper house connections leading from the inner curb line of the street or highway on the one side to the inner curb line on the other side of the street or highway, and connecting into the main or lateral sewer, which cost and expense shall be equally divided in a lump sum and so assessed against the abutting properties on either side of the street.'

"5. By another ordinance approved October 10, 1893, the city directed that 'a system of house drainage sewers be and is hereby directed to be constructed in the First Sewer District according to such plans and specifications as the city engineer may prepare, and he is hereby directed to prepare plans and specifications for said purpose, and the cost and expense of the same be and is hereby levied and shall be and is hereby authorized to be collected from the owners of real estate bounding and abutting on the streets along which the said sewers will be constructed in said district, as follows: in the case of main sewers, the proportion of the cost and expense of the same required for local sewers shall be assessed upon the properties abutting thereon by an equal assessment by the foot front, and the cost of such main sewer over and above the portion thereof assessed for local sewerage shall be paid out of the general revenues, and in case of lateral or branch sewers, the cost and expense thereof shall be assessed upon the properties abutting thereon by an equal assessment by the foot front along or through which such sewers run.'

" There are six sizes of sewers in the said system of the following diameters, namely: ten inches, twelve inches, fifteen inches, eighteen inches, twenty-four inches, and fifty-four inches. As a rule the small sizes are designed for the narrow streets, except where narrow streets are found convenient for the location of main sewers.

" Section 6 of the same ordinance further provides, 'that on all corner lots, an allowance shall be made of one-half of the length of one of their fronts, such allowance to be always and only on the street or highway having the longest front, and no claim for deduction shall thereafter be considered, where by change of property lines, the allowance made shall by such

alteration be placed upon the short side. In case both fronts are equal in dimensions, the allowance shall be made on the side along which a sewer shall be last laid, both sides having a sewer; and in cases where a full block is unimproved, the depth of lot for computing the allowance shall be taken as half the length of lot, and in no case shall the allowance exceed sixty feet on any corner lot.'

" 6. By the said ordinance of October 10th, it was further provided 'that there shall also be constructed along the main and lateral or branch sewers in said district, all proper house connections or branches leading from the main or lateral sewer to the inner curb line on either side of the street or highway, and that the cost and expense thereof shall be and is hereby levied, and shall be and is hereby authorized to be collected from the owners of real estate, for the accommodation of which such connecting branches and pipes may be .constructed by an equal assessment on such properties as follows: In streets of eighty feet and over in width there shall be assessed the sum of seventeen (17) dollars for each house connection; in streets of sixty feet in width there shall be assessed the sum of twelve and 50-100 (12.50) dollars for each house connection; in streets of fifty feet in width there shall be assessed the sum of eleven and 50-100 (11.50) dollars for each house connection; in streets of forty feet in width there shall be assessed the sum of nine (9) dollars for each house connection; in streets of thirty feet in width there shall be assessed the sum of six and 50-100 (6.50) dollars for each house connection, and in streets of twenty feet in width there shall be assessed the sum of six and 50-100 (6.50) dollars for each house connection, *provided, however*, that in no case, except as a sanitary measure of which council shall judge, shall said house connections extend further from said sewers than to the inner line of the curb-stone of said street or highway.'

" 7. By the said ordinance it was also provided ' that immediately after the passage of this ordinance, the city engineer be and is hereby directed to advertise for sealed proposals upon the plans and specifications prepared by him, as directed in the first section of this ordinance, and to present said sealed proposals to councils as provided by law.' He was also (by section 5) directed ' forthwith to ascertain the amount to be levied and col-

lected from each owner of real estate bounding and abutting on streets along and through which such main and lateral sewers run, and he shall assess the same, adding thereto the amount fixed in this ordinance for proper house-connections, in cases where such connections are made, and he shall give at least five days' notice of the time and place of making such assessment by publication in the daily newspapers in the city of Reading for three successive days, and by serving notice on an adult person residing in each of the properties to be affected by said assessment, at which time and place all parties interested shall be heard by the said city engineer.    In case an adult person cannot be found, residing upon any property that may be affected by said assessment, said notice shall be tacked or posted conspicuously on the premises.    Said assessments shall be paid to the city treasurer, and shall be payable in ten equal installments, the first of which shall be due and payable at the expiration of thirty (30) days after the date of the assessment, the second installment shall be due and payable at the expiration of three (3) months thereafter, the third installment shall be payable at the expiration of six (6) months thereafter, the fourth installment shall be due and payable at the expiration of nine (9) months thereafter, the fifth installment shall be due and payable one (1) year thereafter, the sixth installment shall be due and payable at the expiration of fifteen (15) months thereafter, the seventh installment shall be due and payable at the expiration of eighteen (18) months thereafter, the eighth installment shall be due and payable at the expiration of two years thereafter, the ninth installment shall be due and payable at the expiration of two years and six months thereafter, and the tenth and final installment shall be due and payable at the expiration of three (3) years thereafter; the deferred installments shall bear interest at the rate of six per cent per annum, payable semi-annually, commencing thirty days after the date of the assessment, *provided*, that if either the first or any subsequent installment remains unpaid for the space of two months after the same shall be due and payable, the whole of the assessments remaining unpaid shall be due and payable; and *provided further*, that any person upon whom such assessments have been made, may pay all or as many as he chooses of such installments before the same are due. The city engineer shall, as soon as possible after the date of the

assessment herein provided, certify a complete copy thereof to the city treasurer for collection.    It shall be the duty of the city treasurer to keep all moneys received by him under this ordinance, separate and apart from all other money of the city, and no part thereof shall be used or be appropriated for any other purpose than that mentioned in this ordinance.'

" 8.  Both the ordinances above referred to are hereby made part of this finding.

" 9.  Afterwards the city accepted one of the proposals for the construction of this system of improvement, and began and is now proceeding with the construction of sewers in the said district in accordance with the plans and specifications so prepared by the city engineer; and the city engineer has made an assessment in accordance with the principles specified in the ordinance of March 27th, upon all owners of real estate in the said First District fronting on the proposed sewers at the rate of 85.4 cents per front foot, and has fixed Mrs. Witman's share thereof, as the owner of the property aforesaid, at $66.19 ; she being charged by the city engineer for the purposes of said assessment with a frontage of seventy-seven feet six inches; and he has also assessed against her for a house connection with the sewer which will be constructed along the said property, the sum of $12.50, although there is no house or building erected upon her lot.

" The street upon which the said sewer will be constructed is sixty feet in width.

" 10.  The assessments for house connections in the said district, of which the said assessment for $12.50 mentioned in paragraph 9 of this finding is a part, were made by councils in the ordinance of October 10th, upon an estimate furnished by the city engineer, before a contract for making the said connections was let, and therefore before the actual cost price could be accurately ascertained; but the amount fixed in the said ordinance as a charge for house connections was an average of all the bids submitted.    The aggregate of the assessments for house connections in the First Sewer District, as made by the city engineer in obedience to the ordinance, is larger than the aggregate cost and expense of the said house connections will be, but the charge against Mrs. Witman's property is a fair charge for the work to be done there, and no evidence was offered to

support the allegation that the sum of $12.50 is more than the work will actually cost.

" 11. Both the assessment for house connections and the assessment for sewer construction were based not upon the actual cost and expense of the work after it was done, but upon previous estimates of what the cost and expense would be. The assessment for sewer construction was based upon the price agreed upon in the city's contract; but as already stated, the assessment for house connections was made before any contract was entered into for the construction of this branch of the work, and was based upon an average of all the bids submitted.

" 12. The first sewer district aforesaid has an area of from three fourths of a square mile to one square mile, and the assessment by the foot front is for sewers being constructed, or about to be constructed, in every street within its limits, except the following streets, namely: A part of Canal street between Bingaman and Seventh streets; Grape street between Second and Third streets; Furnace street, Mill street, a part of Neversink street between Eighth street and Neversink alley, South Ninth street from South street to the southern city limits, Chestnut street from Canal street to River street, Spruce street from Canal street to River street, Bingaman street from Canal street to River street, and River street from Bingaman street to Chestnut street. The streets upon which sewers are being constructed, or are about to be constructed, have a total length of nearly eighteen miles and a width which varies from twenty feet or less to eighty feet, or if the highway known as Penn Square is included, to a width of two hundred feet. The district embraces a portion of the business center of the city, and extends to the western and southern city limits. It includes all sizes of property, from small dwelling houses with a frontage of ten feet to industrial and manufacturing establishments, coal, lumber, and freight yards, having a frontage of hundreds of feet, and in some cases a frontage upon more streets than one. It embraces properties situate a mile or more apart, some of which on Penn street, are assessed, at, and are worth, with the buildings thereon erected, as much as $1,600 per front foot; and some of which, in the remote parts of the district and on narrow streets, are assessed at and are worth not more than

forty dollars per front foot; or in the case of corner properties, reckoning both fronts, are assessed at and worth not more than ten dollars per front foot. Upon these properties, thus differing widely in size, situation, and value, the method of assessment adopted by the city will impose a tax of eighty-five and four-tenths cents per front foot; so that Mrs. Witman's property, which by reckoning its entire front on Sixth and Laurel streets, is worth, according to the city assessment, about twelve dollars per front foot, will be required to pay as much per front foot as a property on Penn street, worth, according to the same assessment, about $1,600 per front foot.

" This method of assessment also compels Mrs. Witman's property to bear a share of the cost of constructing sewers which do not run along her property, and do not give it the slightest benefit.

" 13. The first installment of the said assessment was made payable on the twenty-fifth day of July, 1894, and the remaining installments at the period specified in the seventh finding of fact. The said sewer system is still in process of construction and will not be finished for some time to come.

" The principal question in the case is this: In view of the facts above found, was the foot front rule lawfully applied as a method of assessment? In Pennsylvania, at least, and elsewhere also as far as we know, this rule has never been used heretofore over so extensive an area and upon properties varying so widely in size, situation and value. In order, therefore, to determine whether it may be properly extended as the city now desires, the reason which supports the rule must be considered and its true nature must be clearly perceived and steadily kept in mind.

" Its nature is well known. It is simply a convenient method of assessing the cost of certain public improvements upon the properties directly affected thereby; and it is supported, and can only be supported, because these properties are so nearly equal in value that equality of burden is thus attained. It rests upon the facts either actually existing or assumed to exist in each particular case, that the lots assessed by this method lie in a similar situation and are similarly affected by all the circumstances which give them value. Minor differences between them are disregarded (although the result of those dif-

ferences may be a real inequality in value), as long as the inequality is not considerable; the reason being, that exact equality of burden can rarely be reached by any form of taxation, and therefore that approximate equality must be accepted. But the essence of the transaction is taxation according to value, and this is not the less true, although it is also true that the value is not a visible but only an assumed factor in the calculation. The process could not be misunderstood, if a different method of calculation should be adopted and if each foot of ground affected by the improvement should be appraised at the same definite value, and the aggregate of values should then be divided into the cost of the improvement. A rate per cent of taxation would thus be produced, and this rate when applied to the value of each foot would give the same result as is now attained by assuming each foot to be just as valuable as every other foot and dividing the cost of the improvement by the number of feet. Both methods rest alike upon the valuation of the property affected, and the only difference is that one method specifies the value and declares it to be the same throughout, while the other method assumes the value to be the same throughout, but does not specify it. This is well understood and need not be supported by the citation of authorities.

"It is manifest, therefore, that as soon as the value of the properties affected begins to differ perceptibly, the reason of the rule begins to weaken, and that a point must at some time be reached where the values differ so widely that the reason, and with the reason the rule itself, must wholly disappear. Upon this ground the court refused to apply the rule to city property and to farming land affected by the same improvement, as may be seen in the decisions of Washington Ave., 69 Pa. 352; Seely v. Pittsburg, 82 Pa. 360, and Keith v. Phila., 126 Pa. 575. See also the recent discussion in Morewood Ave., 159 Pa. 20, following in Fifty-fourth St., 165 Pa. 10. So too, if there is a considerable difference in the amount of benefits received from the improvement, by the respective properties, the rule cannot be applied because of the substantial inequality of burden which in this way would also be produced: Saw Mill Run Bridge, 85 Pa. 163.

"It clearly appears, therefore, that the foot front rule does not express a *principle* of taxation, which might be capable of

indefinite extension over a continually wider area and upon a continually enlarging class of subjects; but that it is a mere device of convenience, based upon the observed facts that properties similarly situated are usually of a similar value, and are usually affected alike by public improvements along their respective fronts. It follows of necessity, that whenever it is proposed to extend the rule to a whole district, as the city of Reading now proposes, such extension can only be permitted if the properties in the whole district are of substantially similar value, and are affected by the contemplated improvement with substantial similarity. This is not a question of law, but a question of fact, and the facts agreed upon by the parties to this particular controversy, and hereinbefore found by the court, sufficiently indicate the answer which the proposition of the city must receive.

"It must be conceded that cases might arise in which it would be hard to say whether the difference in value and in benefits received was so small as to allow, or so great as to forbid, the application of this rule; and upon this question minds might easily differ as upon any other question of fact. Such a difficulty could only be solved by the final decision of some ultimate tribunal, but the question in every case would be the same question, whatever the degree of difference and whatever the final decision might be. It is also conceivable that a difficulty of this kind might arise upon the same street or the same section of a street in a city; even there, under the most favorable circumstances for the application of the rule, inequality in value or in benefits might be so considerable as to make the rule substantially unequal and therefore substantially unjust. And if, as the learned counsel for the city stated at the trial, there is now as much inequality in value between properties at different points upon a single street in the city of Reading, as exists between the most and the least valuable properties in this sewer district, it does not follow (as he seemed to argue), that the foot front rule could nevertheless be applied to all properties upon that street, and therefore that it might be with equal propriety applied throughout the whole district. The consequences would rather be, that the rule would have to be given up or restricted within proper limits, even upon the street, or else that a different and more equitable method of apportionment would have to be adopted.

" In our opinion, the frontage method of assessment, while it is lawful and in a proper case very convenient, ought to be carefully restricted to situations in which substantial equality plainly exists. It is no doubt easy of application, but this is precisely the reason why it is apt to be abused, and why its exercise ought to be jealously scrutinized. It is vastly more important to the well-being of the citizens and the city, that municipal taxation should fall with equal weight upon the property burdened, and thus that a dangerous cause of discontent and irritation and social division should be avoided, than that a method of mere convenience should be adhered to and extended. Municipal improvements will not cease because the foot front rule is not always applicable. Two other methods of assessment, namely : according to actual valuation and according to benefits, are at the city's command ; and while they are somewhat more cumbrous, and perhaps a little more expensive, they have many countervailing advantages. We need not discuss them, however ; our present concern is simply with the foot front rule as the city of Reading proposes now to apply it, and we may bring this part of the opinion to a close, by formally stating the conclusion already foreshadowed : That, because this proposed application would produce inequality of valuation and inequality of benefits to the extent above indicated in the finding of facts, it is illegal and therefore void.

" This scheme of assessment for sewer construction was adopted as a unit, and it is doubtful if any part of it can be saved. It is probably too extensive and too closely connected to permit the division of the work into parts, and the application of the frontage rule to those sections which are equally benefited, and of substantially equal value. If no proper division can be made, one of the other methods of apportioning the cost must be adopted.

" Mrs. Witman's objection to the cost of the house connections assessed against her lot is not supported by sufficient evidence. This assessment is not according to the foot front rule, but is based upon an estimate, which is averred in the answer to be a fair price for the work. In the absence of evidence, the answer must stand, and we have accordingly found the fact in accordance with its averments. Obviously, if the plaintiff's property is not charged more than a fair price, we can give no

weight in this proceeding to the admitted fact that the aggregate of assessments for house connections throughout the district is in excess of the cost and expense of the aggregate work. Other persons who are being charged too much, may have just cause for complaint, but so far as now appears, the plaintiff is not one of this number. Her objection to this assessment is simply that she is being charged too much, and as the fact is otherwise, the objection must fall.

" It might perhaps be well, however, if the city should consider whether the cost of the house connections has been assessed upon a satisfactory basis. If a contract has been made for this work, and if, therefore, the cost can now be accurately estimated, it might be a doubtful question whether the present assessment could be supported against a property owner, who should offer affirmative evidence to show that the amount assessed against him is greater than the cost of doing the work which has connected his property with the sewer. The assessment against Mrs. Witman has only been sustained because the evidence does not support the allegation that she is being charged more than a fair price for the particular work by which she is to benefit.

" It was objected by the city, but not very strenuously, that the plaintiff's remedy at law was adequate, and that no ground for equitable interference has been shown. In reply to this objection, it might perhaps be said that the common knowledge of the bench and the bar concerning the municipal effort to collect the cost of public improvements from abutting property owners would enable the court to say with sufficient certainty that so extensive a scheme as this, affecting hundreds of owners in every variety of situation, could not be carried out without producing a multiplicity of suits. But, without relying upon this reason for the equitable jurisdiction, or allowing any influence to the obvious consideration that a speedy decision of the important questions involved, is at least as much to the ultimate advantage of the defendant as of the plaintiff, it is enough to say briefly that the jurisdiction rests safely upon another ground. This is not the case of mere irregularity in the exercise of a conceded power to tax, or even of oppression in its exercise, as may happen when the undoubted discretion of the taxing authority has been abused; but it is the case of an attempt to tax

by a method which will clearly produce an unjust and therefore an illegal result. The abstract power to levy the tax exists, but practically the power to tax and the method of assessment and collection are inseparable. Therefore, if the method is clearly illegal and void, it is substantially correct to say that the whole tax is void; for without a valid method of assessment, no tax can be either laid or collected.

" Being clearly void the collection of the so-called tax may undoubtedly be restrained by a court of equity in Pennsylvania, although the plaintiff might be at liberty to make the same defense at law: Miller v. Gorman, 38 Pa. 309; St. Clair School Board's App., 74 Pa. 252; Conner's App., 103 Pa. 356; Harper's App., 109 Pa. 9; Banger's App., 109 Pa. 91; Arthur v. School District, 164 Pa. 414.

" If the views above expressed are correct, it is not necessary to pass upon the remaining objection of the plaintiff, which denies the power of councils to authorize the city engineer to perform the duties specified in the ordinance of March 27th, and, therefore, we intimate no opinion upon the subject.

" We conclude as follows :

" 1. Under the facts of this case, the assessment of 85.4 cents upon each front foot of Mrs. Witman's property is illegal and void.

" 2. Upon the evidence laid before us, the amount assessed against the said property for a house connection is valid, because it is a fair and proper charge for the work to be done.

" 3. The plaintiffs have a right to maintain this bill in equity, and are not confined to their remedy at law.

" It is therefore decreed that a perpetual injunction issue restraining the defendant, its officers and agents, from collecting or attempting to collect from Mrs. Witman or from her said property any part of the assessment levied against her lot described in the bill for the cost and expense of constructing the system of house-drain sewers now being constructed, and about to be constructed, in the First Sewer District of the city of Reading under the provisions of the two ordinances above referred to.

" And it is further ordered that the defendant pay the costs of this proceeding."

*Error assigned* was entry of above decree.

*Wm. J. Rourke, Stevens & Stevens* with him, for appellant. —The legality of an assessment depends upon the benefit conferred, whether real or implied by law, and not on the relative value of the property subject to the assessment: Hammett v. Phila., 65 Pa. 146; Seely v. City of Pittsburg, 82 Pa. 360; Washington Ave., 69 Pa. 352; Michener v. Philadelphia, 118 Pa. 535. The act of May 23, 1889, P. L. 312, is constitutional: Oil City v. Oil City Boiler Works, 152 Pa. 363; Harrisburg v. Segelbaum, 151 Pa. 172. The duties of the city engineer in computing the assessments are merely ministerial and not a delegation of legislative power: Dillon's Municipal Corporations, sec. 96, p. 124; Schenley v. Commonwealth, 36 Pa. 62. Courts of equity in cases of this kind have no jurisdiction, as there is an adequate remedy at law upon suits brought to enforce the lien: Olive Cemetery Co. v. Philadelphia, 93 Pa. 129; City of Erie v. First Universalist Church, 105 Pa. 278; Pettibone v. Smith, 150 Pa. 118; Dillon's Mun. Corp. secs. 906, 907; Clinton School District's App., 56 Pa. 315; Hughes v. Kline, 30 Pa. 227; VanNort's App., 121 Pa. 118; Wilson v. Town of Philippi (Supreme Court of Appeals, West Virginia), 19 S. E. Rep. 553.

*Cyrus G. Derr, Ralph H. Mengle* with him, for appellees.— The foot front rule can only be used where it is a fair substitute for a valuation and benefits. Cases which hold that farming lands are not subject to this method of assessment are illustrations: Washington Ave., 69 Pa. 361; Seely v. Pittsburg, 82 Pa. 364; McKeesport v. Fidler, 147 Pa. 532; Hammett v. The City of Philadelphia, 15 P. F. Smith, 155; Harrisburg v. McCormick, 129 Pa. 213; Scranton v. Bush, 160 Pa. 499. The delegation by councils to the city engineer to make assessments against the properties was void: Thomas v. Schemerhorn, 6 N. Y. 92; Bellinger v. Gray, 51 N. Y. 610; Davis v. Réad, 65 N. Y. 566; American and English Ency. of Law, 1043; Thomas v. Gain, 35 Mich. 164. The assessment based upon an estimate made at a time when the cost could not be ascertained is void: Thomas v. Gain, 35 Mich. 155; Hannewinkle v. The Mayor, etc., of Georgetown, 82 U. S. 231; Miller

v. Gorman, 38 Pa. 309; St. Clair School Board's App., 74 Pa. 252; Connor's App., 103 Pa. 356; Harper's App., 109 Pa. 9; Banger's App., 109 Pa. 91; Arthur v. School District, 164 Pa. 414.

OPINION BY MR. JUSTICE MITCHELL, July 18, 1895:

The learned judge below held that the foot front rule could not be lawfully applied as a method of assessment, to complainant's property, and based his conclusion mainly if not exclusively on the difference in value per foot front, of the property along the line of the sewer. From this result we are constrained to differ. While the foot front rule of assessment, it is true does not express a principle of taxation but merely a convenient method, yet its foundation is not in uniformity of value, but in uniformity of benefit. The latter is not always, and perhaps not even generally dependent on the former, or in any fixed ratio to it. Properties in the same general situation are presumed to get the same general benefit from a common improvement, and as this benefit is assessed exclusively on property abutting on the line of the improvement, it is presumed to be fairly measured by the foot frontage of the property on that line, though values may be and usually are very different, and dependent on other circumstances, such as the depth of the lots, the buildings erected upon them, the use to which they are put, and their proximity to business centers, etc. Value undoubtedly is one element to be considered but no case has been cited, nor have I found any in which it was held to be controlling, while in at least one, Harrisburg v. McCormick, 129 Pa. 213, it was practically considered of little or no weight at all. It is held in several of our cases that there must in the public interest be a general rule, and it must be certain and uniform. And there could be no more striking examples of the unbending necessity for a general rule than Harrisburg v. McCormick, supra, and Michener v. Philadelphia, 118 Pa. 535. In my own view the best, if not the only entirely just plan would be as was done in the earlier cases to assess the benefit in each instance by the difference in market value of the property before and after the improvement, yet of this plan Justice SHARSWOOD says in Hammett v. Philadelphia, 65 Pa. 146, "appraising market values and fixing the pro-

portion according to these is open to favoritism or corruption and other objections. No system of taxation which the wit of man ever devised has been found perfectly equal." And he adds, " perhaps no fairer rule can be adopted than the proportion of feet front, though there must be some inequalities if the lots differ in situation and depth." And in Washington Avenue, 69 Pa. 352, although the foot front rule was held inapplicable to the circumstances of the property there charged, yet Chief Justice AGNEW says of it, " whatever doubt might have been originally entertained of it as a substitute, which it really is, for actual assessment by jurors or assessors under oath, it has been so often sanctioned by decision, it would ill become us now to unsettle its foundation by disputing its principle."

In the present case the sewer district is large, and includes lots with very different frontages and very varying values per foot, but it is not averred that it is not all a closely built-up portion of the city, and fairly within the situation laid down in regard to the applicability of the foot front rule, even in Washington avenue, the most unfavorable case to the rule, in our reports. We are of opinion that the circumstances of this case do not justify the setting aside of the rule.

The city took the aggregate cost of local sewers for the whole district, that is, for the purpose of assessment it treated the main sewers as local, and required the excess of cost to be paid by the city, and divided this aggregate sum by the aggregate frontage of the abutting lots, to establish a rate of cost and then assessed this rate so ascertained, against each lot fairly in accordance with its frontage, with an equitable allowance for corner lots, etc., liable to charge for more than one sewer. It is objected that by this method the properties in front of which the smaller sewers are laid, are assessed with more than the cost of those sewers, and that they thus have to pay in part the cost of other sewers from which they derive no benefit. And this result is found as a fact in the case. The objection must prevail, for it is settled that while the measure of assessment is the amount of benefit, yet it is limited to the cost of the improvement. If the cost is only one dollar a foot, that is all that can be assessed on the property, though the benefit may be equal to two dollars a foot. It may be said

with some plausibility that while by the system pursued in this case the small sewer fronts pay more than the actual cost of such sewers, yet they get the advantage of the outlet into the larger ones, and therefore do not pay more than for the benefit received. If each local sewer had to be extended to the point of final discharge its length and cost would be greatly increased. If instead of being thus extended, it gets its outlet through the medium of another sewer, there is a certain fairness in assessing the properties with a part of the cost of that other sewer, and it is argued that such part may be reasonably included in the cost of the small sewer. This argument however is open to the serious objection that it presents no principle on which the limitations of such charges can be fixed. The main sewer into which any particular branch shall empty is not located or its size determined by the needs or convenience of that branch alone or even chiefly, but by the requirements of the whole district. This includes, or may include many branches, of different situations and very various cost. Thus one branch may be through ordinary ground having a natural grade in the right direction, while another may have to be built up through low land with the wrong slope, or cut through rock at greatly increased expense. A ratio of cost made up of the average of these, is not an accurate measure of any one of them.

It is held in Re Park Avenue Sewer, opinion filed herewith, that no properties can be assessed for the cost of a sewer, except those that abut on the line of it. We are of opinion that the mode of ascertaining the rate of cost in the present case is in conflict with that principle, and therefore cannot be sustained.

We have reached this result with some regret, as the system adopted by the city of Reading is an earnest and intelligent effort to deal fairly with a subject of serious and inherent difficulties, and the plan appears to work in practice as justly and conveniently as any that has come to our notice. But the legal and constitutional objections are insurmountable.

There are some other questions in the case which have been argued, but which we do not think necessary to pass upon at the present time as they may become unimportant. The injunction being against the whole assessment because of the application of the foot front rule, is too broad and must be

dissolved, but the complainant may show that her property is one of those charged more by the city's mode of assessment, than its proper share for the sewer in front of it, and if so her assessment will have to be reduced.

Decree reversed and record remitted for further proceedings in accordance with this opinion.