(November 10, 1905.)

## DENNING v. CITY OF MOSCOW.

[83 Pac. 339.]

WRIT OF PROHIBITION—WILL NOT ISSUE WHEN.

1. Where it is shown that the city authorities are acting within the scope of the authority given therein by statute, the writ will be denied.

2. The writ will not issue to prohibit the officers of a city from levying and assessing city property subject to assessment for the payment of certain bonds, and certify such levy and assessment to the county tax collector for collection "as other taxes are collected" under the provisions of subdivision 10 of section 2 (Sess. Laws 1900) and section 86, page 209 (Sess. Laws 1899).

(Syllabus by the court.)

ORIGINAL action for a writ of prohibition. Denied.

S. S. Denning, for Petitioner, cites no authorities not cited in the opinion.

J. H. Forney, for City of Moscow, cites no authorities not cited in the opinion.

STOCKSLAGER, C. J.—The plaintiff filed his application for a writ of prohibition. The facts are agreed upon and we are asked to construe certain provisions of the acts of the legislature, seventh session, and of the eighth session. The facts as agreed upon are that "S. S. Denning is the owner of a certain lot of real estate situated within the corporate limits of the city of Moscow. That the said lot of land has been duly assessed and a tax has been levied thereon by the city council of said city of Moscow for the purpose of constructing, maintaining and operating a sewerage system; that if the said city council shall certify the sewerage assessments to the county tax collector of Latah county, state of Idaho, that thereby the said assessments will be increased upon property of the said S. S. Denning to the extent of one and one-half per cent, and upon all other property within the corporate limits of the said city of Moscow to the extent of one and one-half per cent costs of collection. That this application is made for the purpose of ascertaining from this honorable court, whether such assessments shall be collected by the proper officers of said city of Moscow or whether the said city council shall certify all such assessments and taxes as are now due to the tax collector of Latah county and collected in the same manner as other city taxes are collected."

It is hereby further stipulated that the bonds heretofore mentioned were to be paid in five equal annual installments, and that no installment has yet been levied. That the city has paid all of its installments upon its municipal property, and that the city is not now, neither have they ever been, indebted under subdivision 3 or 4 of section 2 of the Laws of 1893, page 32, by expending from the gen-

eral funds any money in consideration of the benefits accruing to the general public by reason of such sewerage improvement, nor has any ordinance ever been passed since the passage of the construction ordinance "providing for the payment of the costs and expenses thereof by installment, instead of levying the entire tax for special assessments for such costs at any one time."

The writ was not issued, the stipulation in its last clause asking that the case be heard as to whether or not the writ shall issue. The action is against the city of Moscow to prohibit the mayor and city council from certifying an assessment and levy to the assessor and tax collector of Latah county for the purpose of paying the first installment of certain sewerage bonds issued under the provisions of an act of the legislature in 1903. Counsel for plaintiff in his brief says: "There is but one question presented," and that is: "What is the proper mode of assessing, levying and collecting the several installments on the bonds in accordance with the act of 1903?" It is shown by the application that during the year 1902 the city council of the city of Moscow duly levied and assessed certain taxes for sewerage improvements and for the purpose of constructing, maintaining and operating a sewerage system within the corporate limits of the city of Moscow; that there is now due and unpaid on said sewerage assessments the sum of $28,000.

Counsel for plaintiff insists that by the provisions of the law of 1903, there are two schemes, either of which may be followed for the payment of the indebtedness contracted in the building of the sewer as against the property benefited. Subdisivion 10 of section 12 of the act provides that "All such assessments shall be known as special assessments for sewerage assessments and shall be levied and collected as separate taxes in addition to the taxes for general revenue purposes to be placed on the tax-roll for collection subject to the same penalties for collection and in the same manner as other city, town or village taxes." Section 11 of the act provides, "That whenever the mayor and council shall cause

any sewerage work or improvement to be done under the provisions of this act the expense is chargeable to the property within the boundary lines within the sewerage district laid out under the provisions of this act, they may in their discretion thereof provide for the payment for the costs and the expense thereof by installments, instead of levying the entire tax for special assessments for such costs at any such time and for such installments they may issue in the name of the city, town or village improvement bonds of the district, which shall be known and designated as special assessment sewerage improvement bonds.''

Subdivision 12 of section 12 provides: ''Such bonds, when issued to the contractor constructing said work or improvements in payment thereof, or when sold as above provided, · shall transfer to the contractor, or other owner or holder, · the right or interest of such city, town or village in or with respect to every assessment, and the lien thereby created against the property of the owners assessed who shall not have availed themselves of the provisions of this act in regard to their property, as aforesaid, shall authorize said contractor, and his assigns and the owners and holders of said bonds, to receive, sue for and collect every such assessment embraced in any bond by or through any of the methods provided by law for the collection of assessments for local improvements. And if the city, town or village shall fail, neglect or refuse to pay such bonds or to properly collect any such assessments when due, the owner of any such bonds may proceed in his own name to collect any such assessments and foreclose the lien thereof in any court of competent jurisdiction, and shall recover, in addition to the amount of such bonds and interest thereon, five per cent, together with the costs of such suit.''

Section 15 provides that ''The holder of any bond issued under the authority of this act shall have no claim therefor against the city, town or village by which the same is issued in any event, except for the collection of the special assessment made for the work or improvement for which said bond

was issued; but his remedy in case of nonpayment shall be confined to the enforcement of such assessment.''

After calling our attention to the above quotations of the Session Laws of 1903, counsel for plaintiff asks the question: How far is the city liable upon those bonds for the bondholder? If the city should be negligent in making the assessment and levy, how long should this negligence continue before the bondholder can bring an action against the city or a writ of mandate against the city council compelling them to make the assessment and levy?

We have carefully reviewed the law of this case to which our attention has been called, and so far as the only question we deem of importance at this time is concerned, we do not find much embarrassment in determining it; that is, Is the city through its officers properly proceeding to collect the revenue with which to meet the obligations of the city on the outstanding bonds? It seems that the city of Moscow has certified the sewerage taxes to the county tax collector to be collected as ''other taxes are collected.'' It is conceded by counsel for the city that there is no provision in the act of 1903 permitting the city to state when their respective assessments are due, or to become due; that is, there is no authority granted by said act authorizing the city of Moscow to fix the time when these respective installments shall become due. But our attention is called to section 86 of the Fifth Session Laws (1899), page 209. This section reads: ''The council or trustees of each city or village shall, at the time provided by law, cause to be certified to the county tax collector the percentage or number of mills on the dollar of tax to be levied for all city or village purposes by them on the taxable property within said corporation for the year then ensuing as shown by the assessment-roll for said year, including all special assessments and taxes assessed as hereinbefore provided, and the said tax collector shall place the same on the proper tax lists to be collected in the manner provided by law for the collection of state and county taxes.

There is no attempt in the act of 1903 to repeal the above provision of the act of 1899, neither do we find anything in the law of 1903 that in any way conflicts with that provision of the act of 1899. It may have attempted to provide another remedy for the bondholder, but it did not relieve the city authorities from the duty of providing revenue for the payment of its outstanding obligations. Construing the two acts together, we think the duty of the city authorities is plain, and that they are only acting as the law requires when they certify the sewerage taxes to be collected to meet the obligations of the city to the county tax collector to be collected "as other taxes are collected." The writ is denied.

Ailshie, J., and Sullivan, J., concur.