(May 7, 1907.)

R. F. BLACKWELL, Appellant, v. THE VILLAGE OF COEUR D'ALENE et al., Respondents.

[90 Pac. 353.]

MUNICIPAL IMPROVEMENTS—SEWER DISTRICTS—RULE FOR ASSESSMENT OF BENEFITS—LIEN OF ASSESSMENT—FORECLOSURE OF ASSESSMENT LIEN—LIMITATION OF TIME FOR OBJECTIONS.

1. Under the provisions of subdivision 3 of section 12 of the act of February 24, 1905 (Sess. Laws 1905, p. 340), which authorize the formation of sewer districts within cities, towns and villages, and the levy of special assessments for the purpose of con-

structing sewer systems and providing that the assessment shall be made upon the respective lots and parcels of land in proportion to the "front feet of such lands or lots included in said sewerage improvement district . . . . and in proportion to the benefits derived by said sewerage improvement," the assessment should be made with reference both to the frontage of the lots and lands and the benefits to be derived to such property by reason of the sewer improvement.

2. Under the provisions of this statute, it was evidently not the legislative intent that the number of front feet of lots and lands should always be the sole and controlling fact for consideration in levying special assessments for sewer improvements, but it was also intended that the .benefits to be derived by reason of such improvement should be taken into consideration.

3. Under the provisions of section 12 of the act of February 24, 1905, providing for the creation and organization of sewer improvement districts and for the levy and collection of assessments against the property to be benefited thereby, and providing that "no suit to set aside the said special assessment or enjoin the making of the same shall be brought or any objection to the validity thereof shall be allowed after the expiration of thirty days from date the amount due on each lot or piece of ground liable for such assessment is ascertained or confirmed by the · council or trustees," the property owner must make his protest or initiate his proceedings within the time designated by the statute, or he will be precluded from thereafter doing so.

4. Under the provisions of section 12 of the sewerage improvement act, all special assessments levied for the purpose of making such improvement become and are a lien upon the property against which they are levied, the same as any other tax, and are subject to collection and penalties in the same manner and under the same conditions as any other tax.

5. ID.—If in any case the municipal authorities fail or neglect to collect such assessment, or the property owner neglects or refuses to pay the same, the warrant or bond holder may prosecute an action for the collection thereof by foreclosure of the lien in the district court in the same manner as he would foreclose any other lien or mortgage.

6. Under the provisions of subdivision 11 of section 12 of the act, any property owner may redeem his property from the lien of such assessment by paying the whole thereof and at the same time paying all interest accrued up to the time of the payment of the assessment.

7. Under the provisions of the sewer improvement act of February 24, 1905, where warrants or bonds are issued for the payment of the assessments levied in pursuance of the act, there is no city

liability whatever for the payment of such warrants or bonds, and the warrant or bond holders must look exclusively to the assessment so levied and the real property held as a lien for the payment of the same.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for the County of Kootenai. Hon. Ralph T. Morgan, Judge.

Action to procure an injunction restraining the construction of a sewer system within local sewer improvement district No. 1 of the village of Coeur d'Alene, and to restrain the issuance of warrants and bonds for the payment of the assessments levied therefor. Judgment for the defendants and plaintiff appealed. *Affirmed.*

John P. Gray and A. H. Conner, for Appellant.

The language of the constitution is very broad, and refers to the incurring of "indebtedness or liability in any manner or for any purpose." (Article 8, sec. 3.) The wording of this section is simple and easily understood, and was drawn for the purpose of protecting taxpayers and property holders from extravagant and indiscreet administrations. The purpose of this portion of the constitution is so evident that the courts should not allow municipal authorities to indirectly violate the spirit of that provision. (*Bannock County v. Bunting & Co.,* 4 Idaho, 156, 37 Pac. 277.)

The continued reference in the act of February 24, 1905, to the benefit which will accrue to the various pieces of property within the district, together with the fact that the city or village is authorized to expend money out of the general fund of the city in proportion to the amount of benefits accruing to the general public, would seem to indicate that it was the intention of the legislature that property to be served by said improvement should pay for the same, not according to a set or fixed rule to be measured by feet or inches, but in what would seem to be the equitable way, that of paying in accordance with the benefits derived. (*Maine Imp. Co. v. City*

*of Seattle* (Wash.), 82 Pac. 279; *Boom Co. v. Patterson,* 98 U. S. 403, 25 L. ed. 206.)

A taxpayer or any interested party is not barred from attacking the validity of the bonds or the assessment collaterally. (*Dunbar v. Commissioners,* 5 Idaho, 407, 49 Pac. 412.)

The general rule governing the collection of special assessments of this nature is that the statute itself must be the guide as to the method to be pursued in foreclosing the lien. (Cooley on Taxation, 3d ed., 1287.)

Saunders & Flynn, for Respondents.

The Idaho constitution, section 3, article 8, says: "No county . . . . shall incur any indebtedness or liability." The constitutional provision of most of the other states reads as follows: ". . . . shall not become indebted." We believe these two phrases to be synonymous. In the case at bar the village of Coeur d'Alene merely acts as the agent of the legislature in making this assessment for local improvement. The village does not in any way "become" indebted. It is the property which is benefited by the improvement that "becomes" indebted. Neither does the city "incur" any indebtedness or liability, for it is the property which is benefited and that alone which "incurs" the liability or indebtedness.

The California constitution also provides that no municipality shall incur any indebtedness or liability, etc., and that court makes no distinction between the phrase "to become indebted" and the phrase "to incur indebtedness." (*People v. Pacheco,* 27 Cal. 218; *Meyer v. San Francisco,* 150 Cal. 131, 88 Pac. 722. See, also, *Little v. City of Portland,* 26 Or. 235, 37 Pac. 911; *Atkinson v. Great Falls,* 16 Mont. 372, 40 Pac. 877; *City of Litchfield v. Ballou,* 114 U. S. 190, 29 L. ed. 132, 5 Sup. Ct. Rep. 820.)

That indebtedness of this nature is not an indebtedness of the city seems to be well established by authorities in almost every state. (*Davis v. City of Des Moines,* 71 Iowa, 500, 32 N. W. 470; *Corey v. City of Fort Dodge* (Iowa), 111 N. W. 6; *Tuttle v. Polk,* 92 Iowa, 433, 60 N. W. 733; *City of Clinton v. Walliker,* 98 Iowa, 655, 68 N. W. 431; *Quill v. City of Indi-*

anapolis, 24 Ind. 292, 7 L. R. A. 681; *Winston v. City of Spokane*, 12 Wash. 524, 41 Pac. 888; *Smith v. Seattle*, 25 Wash. 300, 65 Pac. 612; *Commissioners of Highways of Goshen v. Jackson*, 165 Ill. 17, 45 N. E. 1000; *Fuller v. Heath*, 89 Ill. 296; *Kansas City v. Ward*, 134 Mo. 172, 35 S. W. 600; Abbott on Municipal Corporations, p. 336.)

The validity of laws creating local assessment districts has been upheld in numerous cases. (Smith's Modern Law of Municipal Corporations, secs. 1129, 1130, 1154 et seq.; *Carpenter v. City of St. Paul*, 23 Minn. 232; *Rogers v. City of St. Paul*, 22 Minn. 494-507; *Smith v. City of Seattle*, 25 Wash. 300, 65 Pac. 612; *Adams v. City of Shelbyville*, 154 Ind. 467, 77 Am. St. Rep. 484, 57 N. E. 114, 49 L. R. A. 797.)

In the absence of constitutional prohibition, the legislature may delegate to the local authorities the power to establish assessment districts. (Cooley on Taxation, 2d ed., 640; Smith's Modern Law of Municipal Corporations, sec. 1241.)

The cost of the local assessment may be assessed against the property benefited according to the benefits to the real property in such district. (Laws 1905, p. 334, sec. 12; *Lyon v. Town of Tonowanda*, 98 Fed. 361; *Norwood v. Baker*, 172 U. S. 269, 43 L. ed. 448, 19 Sup. Ct. Rep. 187; Dillon on Municipal Corporations, 3d ed., sec. 809.)

The controlling idea is that the assessment must be according to benefits, at the same time having reference to the frontage of the lots. (*New Whatcom v. Bellingham Bay Imp. Co.*, 16 Wash. 137, 47 Pac. 236; 1 Abbott on Municipal Corporations, p. 798.)

Where the property consists of lots of substantially equal depth, abutting a local improvement, and there is nothing in the nature of the circumstances of the particular case showing that an assessment in proportion to the frontage of the lots upon the improvement would work manifest injustice, such a mode of assessment will be upheld. (Smith's Modern Law of Municipal Corporations, sec. 1253; *Whitman v. City of Reading*, 169 Pa. St. 375, 32 Atl. 576.)

The question of benefits to property from a local improvement is not determined by the use the owner may make of it.

The assessments on frontage may be valid, although the assessments exceed the benefit. (*Allen v. City of Davenport,* 107 Iowa, 90, 77 N. W. 532; Smith's Modern Law of Municipal Corporations, sec. 1269.)

Where the proper authorities determine the frontage to be the proper measure of benefits, this determination can be neither disputed nor disproved. (Smith's Modern Law of Municipal Corporations, sec. 1271.)

The power being expressly given by the statute to make such a local improvement within its borders, the power to secure a main outlet for the sewerage system beyond the borders follows necessarily by implication. (*Maywood Co. v. Village of Maywood,* 140 Ill. 216, 29 N. E. 704.)

Where an owner within the assessment district did not file objections within the time prescribed by law and ordinance of the board, that owner is precluded from afterward questioning or attacking the validity of the said bonds when issued. (*State v. Norton,* 63 Minn. 497, 65 N. W. 935; *Pierson v. People,* 204 Ill. 456, 68 N. E. 383; *New Whatcom v. Bellingham Bay Imp. Co.* 16 Wash. 137, 47 Pac. 236; Abbott on Municipal Corporations, sec. 377 et seq.)

Richards & Haga, for Boise City, made oral argument and filed memorandum of authorities in support of the position taken by respondent, village of Coeur d'Alene.

AILSHIE, C. J.—This action was tried in the district court on an agreed statement of facts, and ten questions were submitted to the court for determination. It appears that the trustees of the village of Coeur d'Alene, in the summer of 1906, determined to avail themselves of the provisions of the act of February 24, 1905, authorizing cities, towns and villages to construct and maintain sewerage systems, etc., and accordingly passed an ordinance creating and establishing "local sewerage improvement district No. 1" of the village of Coeur d'Alene. They thereafter appointed a sewerage committee and authorized and directed them to prepare an assessment-roll for the district, which

they did, and filed and submitted the same to the board of trustees. The assessment-roll as prepared by the committee was approved by the board of trustees, and they thereupon ordered that notice of the approval of the assessment and of the date on which they would thereafter meet for the purpose of hearing objections be published. No objections or protests were made and the assessment was thereupon confirmed by the board. The action of the board of trustees was approved and confirmed by the district court, and this appeal has been prosecuted from the judgment so made and entered. The questions submitted to the district court for consideration are as follows:

"1. Can local assessment districts be created for constructing sewerage improvements and the indebtedness of such local assessment districts not be considered when computing the limit of municipal indebtedness, and may the local assessment district be created and the indebtedness incurred without submitting the question of incurring the indebtedness to a vote of the electors, and may the cost of the local assessment be assessed against the property benefited according to the benefits to the real property in such district?

"2. May bonds be issued and sold by the village of Coeur d'Alene to pay for local improvements and the said bonds secured by a lien upon the property benefited?

"3. Is the act of the legislature of the state of Idaho, approved February 24, 1905, and entitled 'An act to authorize and empower cities, towns and villages within the state of Idaho to construct, maintain and operate a sewerage system and sewerage disposal works, appointing a committee therefor, and defining and regulating their powers and duties; providing for the levying of a special assessment for such works and the expenses connected therewith, and providing for the issuance of bonds therefor, and providing for the penalty of noncompliance therewith, and to legalize, validate and confirm all acts of whatsoever kind and nature done and performed, and all bonds issued or to be issued, or assessments made by cities, towns or villages of the state of Idaho under and by virtue of an act entitled "An act to authorize

and empower cities, towns and villages within the state of Idaho to construct, maintain and operate a sewerage system and sewerage disposal works, appointing a committee therefor and defining and regulating their powers and duties; providing for the levying of a special assessment of such works and the expenses connected therewith, and providing for the penalty of noncompliance therewith,'' approved the twentieth day of February, 1903,' being Senate Bill No. 43, and found at pages 334 to 350, inclusive, of the Session Laws of the eighth session of the state legislature of the state of Idaho, a constitutional enactment?

''4. Is the assessment of the lots, parcels and pieces of land within the local sewerage improvement district No. 1 made in proportion to the benefits to the property to be benefited, according to the provisions of said act of February 24, 1905?

''5. Can the cost of the main outlet to the said sewerage system be assessed against all of the property within the sewerage district, and is the assessment of the cost of each lateral against the property which is served a valid and legal assessment under the provisions of the said act of the legislature?

''6. Can the question of the validity of the said bonds, when issued, be questioned or attacked by any person owning property within said improvement district who did not file his protest with the board of trustees within the period of time allowed by law and the ordinance of the said board?

''7. Are the said bonds a lien upon the property benefited according to the amounts assessed against said property on the assessment-roll, prepared by the sewer committee and the committee on streets of the board of trustees and approved by the board of trustees, and may the said lien be foreclosed by suit in the district court?

''8. May any suit to set aside the special assessment or enjoin the issuance of the bonds or the making of the improvement be allowed after the expiration of thirty days from the date the amount on each piece or parcel of land liable for such assessment was confirmed by the board of trustees, even though the proceedings ordering the said im-

provements and the issuance of said bonds and sale thereof were defective?

"9. Are the said bonds so authorized to be issued valid and legal bonds secured by a lien upon the property within the sewerage improvement district for the amount of the assessment upon each lot or parcel of land therein?

"10. In case the bonds are legal and valid, may the owner of any lot or parcel of land redeem the same from all liability from said assessment by paying all installments of said assessment remaining unpaid and charged against such property at the time of such payment, with interest as provided in the said ordinance from the date of issuance to the time of maturity of the last installment or from the date of issuance to the date of redemption?"

The first question submitted is thus presented by counsel for appellant in their brief:

"The first question submitted for consideration in this case involves four separate questions: (a) Can local assessment districts be created? (b) Shall the indebtedness in such districts be considered in computing the limit of municipal indebtedness? (c) May such district be created and the indebtedness incurred without submitting the question to the vote of the electors? (d) May the cost of the local assessment be assessed against the property benefited according to the benefits to the real property in such district?"

On oral argument counsel for appellant have conceded that such local assessment districts can be created, and that the indebtedness incurred in such districts should not be computed against the debt limitation, and that the same may be done without a vote of the people, and that the assessment therefor may be levied against the property benefited thereby. This question has received our consideration in *McGilvery v. City of Lewiston, ante,* p. 338, 90 Pac. 348, at this present term.

Questions 2 and 3 are dependent upon the determination of the first question and will be disposed of in accordance with the conclusion reached thereon. These subjects also

received some consideration in case of *McGilvery v. City of Lewiston, supra.*

The assessments in this case were made upon, in accordance with and in proportion to the frontage of each lot within the sewerage district, and appellant complains that such method of assessment did not result in assessing the property in accordance with the ''benefits to be derived by such sewerage improvements.'' The statute under which this improvement is proposed to be made, and under which the assessment is levied, is found in subdivision 3 of section 12 of the act of February 24, 1905 (Sess. Laws 1905, p. 340), and is as follows: ''Such ordinance shall provide that such sewerage improvement shall ·be made and that the cost and expense thereof shall be fixed and assessed upon all the property in such local sewerage improvement district, which cost shall be assessed in proportion to the property front feet of such lands or lots included in said sewerage improvement district as hereinbefore stated, and as in this act provided and in proportion to the benefits derived by said sewerage improvements: *Provided,* That the city council or trustees may expend from the general fund for such purposes such sums as in their judgment may be fair and equitable in consideration of the benefits accruing to the general public by reason of such sewerage improvement.''

It will be noted that the statute provides for the assessment of the cost of such improvement against the property in proportion to the ''front feet of such lands or lots included'' in the district, and continues in the same sentence by saying, ''and in proportion to the benefits derived by such sewerage improvement.'' The purpose and intent of the act was evidently to require the assessment to be made as nearly as possible in proportion to the benefits to be derived to the specific piece of property from and on account of the particular improvement intended. While the frontage could not in all cases be used as the sole criterion in making the assessment, if it is to be made with reference to the benefits to be derived, still it would always be an essential element in determining the amount to be assessed. In many cases it would

be a sufficient and controlling fact in determining the proportionate assessment each tract or parcel of land should bear. In some districts the lots would all derive approximately the same benefit from the improvement and would be enhanced in value alike on account thereof. In such districts, assessments levied with reference only to the frontage of the various lots would be as just and equitable an assessment as it would perhaps be possible to make. In other districts, however, a consideration of the frontage alone would not result in a just and equitable assessment with reference to benefits to be derived from the improvement. One lot might be of practically no value whatever without the sewerage improvement, but with the improvement would thus become of great value. Another lot might be only slightly benefited and enhanced in value as compared with the former on account of such improvement. These facts and conditions would depend largely upon the topography of the district over which the system would be constructed. We do not think the statute was intended to establish a hard-and-fast rule to the effect that assessments should be made solely with reference to the frontage of the lots. In the case at bar, however, no fact appears that would indicate that any injustice has been done by levying the assessment with reference to the frontage alone. Indeed, nothing appears to show that the assessment has not been just and proportionate with the benefits to be derived from the improvement. (*City of New Whatcom v. Bellingham Bay Improvement Co.*, 16 Wash. 137, 47 Pac. 236; 1 Abbott on Municipal Corporations, 798; *Medland v. Linton*, 60 Neb. 247, 82 N. W. 866; Smith's Modern Law of Municipal Corporations, sec. 1253; *Whitcomb v. City of Reading*, 169 Pa. St. 375, 32 Atl. 576; 2 Cooley on Taxation, 1217, 1227; *Maine Imp. Co. v. City of Seattle*, (Wash.), 82 Pac. 279; *Boone Co. v. Patterson*, 98 U. S. 403, 25 L. ed. 206.)

Question 5 is covered by our consideration of No. 4.

Questions 6 and 8 involve the inquiry as to whether a taxpayer or property owner · can be heard to question the validity of the assessment after the expiration of the

time designated and prescribed by subdivision 11 of section 12 of the act of February 24th (Sess. Laws 1905, p. 305.) The provision of the statute particularly applicable to this question is as follows: ''No suit to set aside the said special assessment or to enjoin the making of the same shall be brought or any objection to the validity thereof shall be allowed after the expiration of thirty days from the date the amount due on each lot or piece of ground liable for such assessment is ascertained or confirmed by the council or trustees.''

No reason has been shown why this provision of the statute should not be enforced. If a property owner does not see fit to make his protest or initiate his objections to the action of the council or board of trustees and the assessment authorized and levied by them within the time prescribed by the statute, he should be precluded from thereafter doing so. So long as he is not entirely deprived of and precluded from the exercise of such right, he cannot object to the limitation of time placed upon him where that limitation is not unreasonable. Where he has had the several notices as required under the statute to be given in course of the proceedings, and is also given the further period of thirty days from and after the confirmation of the assessment by the board of trustees, he cannot complain on the ground that he has not had sufficient time and opportunity to file his protest or make his objections or institute his proceedings. The statute of the state of Minnesota contains a provision very similar to that under consideration here, and in *State v. Norton,* 63 Minn. 497, 65 N. W. 935, the supreme court said: ''While the extraordinary spectacle is presented of the expense of public improvement in excess of the value of the property against which the expense is assessed yet it appears that the defendants took no steps to prevent or right this apparent wrong. They had notice that a contract had been let for this improvement, that the assessment therefor would be confirmed at a certain place and time, and that bonds would be issued for the amount necessary to make such improvement; and, with an opportunity to be heard, they remained silent

and inactive, without protest or objection. And, when the city council finally confirmed the assessment they did not appeal therefrom to the district court as provided by law. Nor did they take any legal steps to protect their rights until more than two years after the issuance of the improvement bonds. The law gave the defendants ample time and opportunity to be heard in regard to the council proceedings in making assessments for improvement, but, by their acquiescence or supineness, they allowed the time to pass by for so doing, and they must be concluded by the proceedings against them. Such a rule is essential to the due administration of justice. If they desired to repudiate the entire proceedings, they should have moved at the first opportunity, or within the time allowed by law; and, failing to do so, the action of the city council is made final and conclusive. The statute which we have quoted is imperative upon this point and we are not permitted to disregard it, even in a case of seeming hardship.''

A similar statute has been upheld by the supreme court of Washington in *City of New Whatcom v. Bellingham Bay Imp. Co.,* 16 Wash. 137, 47 Pac. 236. (See, also, 1 Abbott on Municipal Corporations, secs. 373, 377; *Warren v. Riddle,* 106 Cal. 352, 39 Pac. 781.) Of course, this requirement of the statute would have no application to a question of jurisdiction. In other words, if the board of trustees or council should act without acquiring jurisdiction so to do, the parties affected thereby might attack such action without reference to this provision of the statute. (See *Dunbar v. Commissioners of Canyon County,* 5 Idaho, 407, 49 Pac. 409.)

Question 7 involves two propositions: 1. Are the bonds and indebtedness covered thereby a lien upon the property within the sewer district, and if so, what is the nature of that lien and how may it be enforced? Subdivision 10 of section 12 of the act provides that ''all such assessments shall be known as 'special assessments for sewerage improvements; and shall be levied and collected as separate taxes in addition to the taxes for general revenue purposes, to be placed on the tax-roll for collection, subject to same

penalties, and in the same manner as other city, town or village taxes.'' This provision of the statute leaves no doubt but that the assessment becomes a lien on the property of the district in the same manner as any other tax lien and of the same validity, force and effect, each separate lot or parcel of land being holden to the extent and amount of the assessment levied thereon. Subdivision 12 of section 12 provides that when the bonds are issued to the contractors, all the right of the city or village in or with respect to such assessments and the lien created thereby is transferred to the owner and holder of the bonds, and that he shall have the right to ''sue for and collect every such assessment embraced in any such bond by or through any of the methods provided by law for the collection of assessments for local improvements.'' In order to fully secure and satisfy the purchasers or holders of these bonds, the legislature provided a further and additional remedy for the bondholder in the event of neglect of duty on the part of the city officials or failure on the part of the property owner to pay the installments as they fall due, and they accordingly further provided as follows: ''And if the city, town or village shall fail, neglect or refuse to pay said bond, or to properly collect any such assessments when due, the owner of any such bond may proceed in his own name to collect any such assessments and foreclose the lien thereof in any court of competent jurisdiction, and shall recover, in addition to the amount of such bonds, and interest thereon, five per cent together with the costs of such suit.''

It is made clear by these provisions in the statute that the purchasers and holders of the bonds or warrants issued for the purpose designated in the act have two remedies for the collection of the principal and interest of these obligations. First, in case the village authorities should neglect or fail to pursue the usual and ordinary methods provided by statute for the collection of the tax or assessment, the creditor may compel them to do so by procuring a writ of mandate against the proper officials. On the other hand, if they fail and neglect to discharge this duty, and the property owners

become delinquent in the payment of their installments, he may proceed in the ordinary way to foreclose his lien through the district court in the same manner as he would foreclose any other mortgage or lien. In any event, the claim and lien is a charge *in rem* only, and enforceable against the property but not against the person.

The act of February 20, 1903 (Sess. Laws. 1903, p. 30), contained section 12 as it appears in the act of 1905, and in *Denning v. City of Moscow,* 11 Idaho, 115, 83 Pac. 339, we had occasion to touch upon this question and to consider the duties of the city authorities in the levy and collection of such assessments and the remedies provided for the creditor. (See, also, *City of New Whatcom v. Bellingham Bay Imp. Co.,* 16 Wash. 137, 47 Pac. 236.)

9. This question is fully answered in our consideration of question 7.

10. Subdivision 11 of section 12 contains a provision authorizing the property owner to pay the full assessment at any time and relieve his property from the lien and encumbrance created thereby. The question has arisen here over the amount of interest he shall pay in order to redeem. The statute says: "The owner of any such lot or parcel of land may redeem the same from all liability for said assessment at any time after said thirty days, by paying all the installments of said assessment remaining unpaid and charged against such property at the time of such payment, with interest thereon at the rate of not to exceed eight per cent per annum from the date of issuance to the time of maturity of the last installment." There is considerable uncertainty as to just what was meant by the words "last installment" as used in this sentence. There is a question as to whether it means the last and final payment to be made on the assessment, or the date of maturity of the last installment immediately preceding the date of the proposed redemption. It is scarcely possible that the legislature meant to provide that the property owner might pay the entire assessment at one time, thereby relieving his property from the lien and burden of the assessment, and at the same time

require him to pay all the interest that he would have to pay if he allowed the installments to run until their final maturity. On the other hand, it would seem scarcely just to deprive the bondholder of his interest from the date of the maturity of the last preceding payment up to the time of the redemption. In some instances that might deprive him of practically a year's interest. In view of the obscurity and uncertainty of this statute, it having specifically provided that interest shall be paid, we hold that the property owner may make such redemption upon payment of interest accrued up to the date of such redemption. This is just and fair to both the property owner and the bondholder, and we will infer that that is what the legislature intended to provide, although they did it very imperfectly. The charter of the city of Lewiston contains a similar provision and is equally obscure, and in *McGilvery v. City of Lewiston,* we hold as above indicated. To hold that the redemptioner must pay interest to the date of maturity of the final payment, if he should redeem at once, would be too unjust and inequitable for a court to tolerate or enforce. It would amount to taking his property without consideration or compensation therefor; neither would it leave him on an equal footing with the property owner who did not see fit to pay his assessments until the several installments matured.

The judgment of the trial court refusing and denying an injunction is affirmed and the answers of the court to the several questions submitted will be modified in accordance with the views herein expressed, and for that purpose only the cause will be remanded. Costs awarded in favor of the respondents.

Sullivan, J., concurs.