(September 21, 1912.)

## CHARLES FEIL, Appellant, v. CITY OF COEUR D'ALENE et al., Respondents.

[129 Pac. 643.]

PURCHASE OF WATERWORKS—DEBT LIMITATION—WHAT CONSTITUTES DEBT OR LIABILITY—CONSTITUTIONAL CONSTRUCTION.

(Syllabus by the court.)

1. Sec. 3, art. 8, of the state constitution, provides that "No . . . . city . . . . shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose," etc.

2. Where the city of Coeur d'Alene was indebted up to the maximum debt limitation, and while so indebted the council passed and the mayor approved an ordinance authorizing and directing the proper officers to purchase a water system, and pay therefor the sum of $180,000 and issue the bonds of the city for the same, payable in twenty years, with interest thereon at six per cent, and provided in such ordinance that the city should not be liable in any manner or form for the payment of such bonds, except that it bound and obligated itself to maintain water rates high enough to collect an annual income from the water consumers to pay all the running expenses of the waterworks system, and to raise a sufficient fund thereby to pay interest at six per cent and the entire principal within the period of twenty years, and at the same time covenanted and agreed not to sell or encumber any of the property purchased until full payment should be made therefor; held, that such ordinance and contract, if carried out, would create a liability in violation of the provisions of sec. 3, art. 8, of the state constitution.

3. The word "liability" as used in sec. 3, art. 8, of the constitution is to be read, construed and accepted in the usual and ordinary

sense in which that term is commonly employed, and when so used means and signifies the state of being bound or obligated in law or justice to do, pay, or make good something.

4. Under the provisions of sec. 3, art. 8, of the state constitution, a city may anticipate both the *income and revenue* provided for it for such year, and incur *debts or liabilities* against the city which can be met and discharged out of the aggregate *income and revenue* for that year, but the city has no right to anticipate, set aside and hypothecate either the income or revenue of the city, or any part thereof, for a special purpose, for a period of twenty years in advance.

5. When a city acquires its own water system and engages in selling and distributing water to its inhabitants and charging rates therefor, it becomes subject to the same duties and obligations and responsibilities of an individual or private corporation running and operating a like business, and is subject to have the rates charged, regulated and fixed in the same manner prescribed by law for the fixing of water rates generally.

6. A water rate sufficiently high to pay all running expenses and improvements and repairs of the system and six per cent on the entire value of the plant and the purchase price therefor, in the period of twenty years, would be unreasonable, and it would be beyond the power and authority of the city to contract in advance to maintain water rentals at such a rate.

APPEAL from the District Court of the Eighth Judicial District for the County of Kootenai. Hon. Robert N. Dunn, Judge.

Action to enjoin the issuance and sale of certain municipal coupon bonds and declare ordinance No. 380 of the city of Coeur d'Alene void. Judgment for defendant and the plaintiff appealed. *Reversed.*

Whitla & Nelson, for Appellant.

Under the ordinance in question, the city is to issue its promise to pay. It necessarily follows that the city becomes indebted. The legislature of this state and the people when they adopted the constitution had in mind only the one kind of a debt to be incurred by the city. They intended to restrict the power of the city to become indebted, and the indebtedness

which they attempted to restrict covers all kinds of encumbrances whatsoever. (Par. 130, Dillon, Mun. Corp., 4th ed., and cases cited; *Voss v. Waterloo Water Co.*, 163 Ind. 69, 21 N. E. 208, 106 Am. St. 201, 2 Ann. Cas. 978, 66 L. R. A. 95; *Browne v. City of Boston*, 179 Mass. 321, 60 N. E. 934; *Ironwood Water Works Co. v. Trebilcock*, 99 Mich. 454, 58 N. W. 371; *Hall v. Cedar Rapids*, 115 Iowa, 199, 88 N. W. 448.)

The city in operating the water plant operates the same as any other private corporation, and can only charge reasonable rates for the water used by its patrons. (*Twitchell v. City of Spokane*, 55 Wash. 86, 104 Pac. 150, 133 Am. St. 1021, 24 L. R. A., N. S., 290; Cent. Digest, "Water and Waterworks," 290, 299; Dec. Digest, "Water and Watercourses," par. 203.)

A municipal body or county must follow the spirit of the law and of the provisions of the constitution, and would not be permitted by subterfuge to do indirectly what the statute prohibits them from doing. (*People ex rel. Lincoln County v. George*, 3 Ida. 72, 26 Pac. 983; *McDonald v. Doust*, 11 Ida. 14, 81 Pac. 60, 69 L. R. A. 220.)

From the allegations of the complaint, which must be taken as true, the price is greatly excessive, and the courts will always lean toward the protection of the people, and will enjoin a city from entering into an unreasonable and unconscionable contract. (*Avery v. Job*, 25 Or. 512, 36 Pac. 293; *Winkler v. Summers*, 51 Hun, 636; 5 N. Y. Supp. 723.)

McFarland & McFarland, for Appellant Robinson.

Sec. 2315, Rev. Codes, as amended by the Laws of 1911, p. 66, and sec. 2238, subd. 36, do not provide for the issuance of municipal bonds without the submission of the question to the qualified electors of such city. (*Woodward v. City of Grangeville*, 13 Ida. 652, 92 Pac. 840; *Ostrander v. City of Salmon*, 20 Ida. 153, 117 Pac. 692.)

"When the question arises as to the reasonableness of rates, stockholders of the company are not the only persons whose rights are to be considered. The rights of the people are not to be ignored." (*Covington etc. Road Co. v. Sanford*, 164 U. S. 578, 596, 17 Sup. Ct. 198, 41 L. ed. 560.)

Constitutions and statutes authorizing cities to acquire water systems and to issue bonds for that purpose should be strictly pursued in every particular. (1 McQuillin, Mun. Corp., p. 819, sec. 371.)

John P. Gray, for Respondents.

The indebtedness provided for by the ordinance in question is not a general indebtedness. (*Ostrander v. City of Salmon,* 20 Ida. 153, 117 Pac. 692.)

The identical question was before the supreme court of the state of Washington in *Winston v. City of Spokane,* 12 Wash. 524, 41 Pac. 888.

The constitution of Washington is slightly different from our constitution, but the principle is the same as that involved in the construction of the Idaho constitution. (See, also, *Kenyon v. Spokane,* 17 Wash. 57, 48 Pac. 783; *McEwan v. Spokane,* 16 Wash. 212, 47 Pac. 433; *Faulkner v. City of Seattle,* 19 Wash. 320, 53 Pac. 365; *Dean v. City of Walla Walla,* 48 Wash. 75, 92 Pac. 895; *Griffin v. City of Tacoma,* 49 Wash. 524, 95 Pac. 1107; *Brockenbrough v. Board of Water Commrs.,* 134 N. C. 1, 46 S. E. 28; *Swanson v. City of Ottumwa,* 118 Iowa, 161, 91 N. W. 1048, 59 L. R. A. 620; *State v. City of Neosho,* 203 Mo. 40, 101 S. W. 99; *Connor v. City of Marshfield,* 128 Wis. 280, 107 N. W. 639; *Board of Commrs. of Monroe County v. Harrell,* 147 Ind. 500, 46 N. E. 124; Gray, Limitations of Taxing Power and Public Indebtedness, sec. 2111.)

This court has adopted the principle of constitutional and statutory construction which is controlling in the determination of this question. (*McGilvery v. City of Lewiston,* 13 Ida. 338, 90 Pac. 348; *Blackwell v. City of Coeur d'Alene,* 13 Ida. 357, 90 Pac. 353.)

If a municipality owns or operates a public enterprise in the nature of a water system or lighting plant, the rates and service are the subject of regulation in the same manner and to the same extent as though the service were furnished by a

private corporation. (Wyman, Public Service Corp., sec. 218.)

No facts are stated in the pleadings showing any fraudulent intent on the part of the council or any member, and no facts are alleged showing or tending to show that there is any abuse of discretion on the part of the municipal authorities. (*Oakley v. Atlantic City*, 53 N. J. L. 127, 44 Atl. 651; *Ryan v. City of Paterson*, 66 N. J. L. 533, 49 Atl. 587.)

Where there are facts which show their action to be consistent with an honest judgment, the court should not interfere. (*Van Reipen v. Jersey City*, 58 N. J. L. 262, 33 Atl. 740; *Findley v. City of Pittsburgh*, 82 Pa. 351; *Ferguson v. Board*, 60 N. J. L. 404, 38 Atl. 676.)

Courts have uniformly refused to interfere or judicially review the proceedings leading up to the making of the contract or adoption of the ordinance. (*O'Brien v. Drinkenberg*, 41 Mont. 538, 111 Pac. 137; *Collins v. City of Keokuk*, 147 Iowa, 233, 124 N. W. 601.)

If there is room for a reasonable difference of opinion, the action of the council is final. (*City of Marengo v. Eichler*, 245 Ill. 47, 91 N. E. 758; *Northwestern University v. Willamette*, 230 Ill. 80, 82 N. E. 615; *Reed v. City of Anoka*, 85 Minn. 294, 88 N. W. 981; *Georgia R. & Banking Co. v. Jordon*, 122 Ga. 422, 50 S. E. 123; *Seward v. Town of Liberty*, 142 Ind. 551, 42 N. E. 39.)

## STATEMENT OF FACTS.

In the month of June, 1912, the city council of the city of Coeur d'Alene passed and the mayor approved the following ordinance, numbered 380:

"An ordinance providing for the purchase by the city of Coeur d'Alene, of the water works system now owned by the Consumers' Company, Limited, in the City of Coeur d'Alene, together with all pipes, conduits, reservoirs, pumps, water rights, franchises, and all other property of every description connected with or appurtenant to said water system either within or without the city of Coeur d'Alene, and providing

for the issuance of water bonds in the amount of $180,000.00 to be delivered to Eggleston & Company in payment for said water works, said bonds to be payable out of and chargeable solely to the receipts of said water works, and repealing all ordinances and parts of ordinances in conflict with this ordinance.

"WHEREAS, it is desirable that the city of Coeur d'Alene acquire and operate a water works plant for the purpose of supplying its inhabitants with a sufficient supply of water for domestic purposes, and furnishing fire protection, and for the better care of its streets and sewers, and

"WHEREAS, the Consumers Company, Ltd., owns and operates a water plant in the city of Coeur d'Alene, under franchise granted by the city, and said Eggleston & Company have offered to procure and sell said plant, with its appurtenances, to the city of Coeur d'Alene for the sum of $180,000.00 taking in payment the city's bonds, payable out of and chargeable solely to the receipts derived from said water works plant.

"Now THEREFORE BE IT ORDAINED by the Mayor and Council of the City of Coeur d'Alene:

"SECTION 1.   That the Mayor and City Council be, and they are hereby authorized to enter into a contract with the said Eggleston & Company for the purchase of said water plant with all of the appurtenances and franchises held by said Consumers Company, Limited, upon the terms and conditions herein specified.

"SECTION 2.   That there be issued the bonds of the City of Coeur d'Alene in the aggregate amount of $180,000.00 consisting of 180 bonds of $1,000.00 each, being numbered from 1 to 180, both inclusive, and dated June 1, 1912, bearing interest at 6% per annum, interest payable semi-anually on the 1st day of June and December, upon presentation and surrender of interest coupons to be annexed to said bonds both principal and interest to be paid in gold coin of the United States of the present standard of weight and fineness, at the fiscal agency of the State of Idaho in New York City, solely from the fund to be created from the revenues of the water

works to be purchased hereunder as hereinafter provided. The said bonds shall mature as follows:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| $ 5,000 | due | June | 1, | 1913, | being bonds numbered | 1 to | 5, | inclusive. |
| 5,000 | due | June | 1, | 1914, | being bonds numbered | 6 to | 10, | " |
| 5,000 | due | June | 1, | 1915, | being bonds numbered | 11 to | 15, | " |
| 5,000 | due | June | 1, | 1916, | being bonds numbered | 16 to | 20, | " |
| 5,000 | due | June | 1, | 1917, | being bonds numbered | 21 to | 25, | " |
| 8,000 | due | June | 1, | 1918, | being bonds numbered | 26 to | 33, | " |
| 8,000 | due | June | 1, | 1919, | being bonds numbered | 34 to | 41, | " |
| 8,000 | due | June | 1, | 1920, | being bonds numbered | 42 to | 49, | " |
| 8,000 | due | June | 1, | 1921, | being bonds numbered | 50 to | 57, | " |
| 8,000 | due | June | 1, | 1922, | being bonds numbered | 58 to | 65, | " |
| 11,000 | due | June | 1, | 1923, | being bonds numbered | 66 to | 76, | " |
| 11,000 | due | June | 1, | 1924, | being bonds numbered | 77 to | 87, | " |
| 11,000 | due | June | 1, | 1925, | being bonds numbered | 88 to | 98, | " |
| 11,000 | due | June | 1, | 1926, | being bonds numbered | 99 to | 109, | " |
| 11,000 | due | June | 1, | 1927, | being bonds numbered | 110 to | 120, | " |
| 12,000 | due | June | 1, | 1928, | being bonds numbered | 121 to | 132, | " |
| 12,000 | due | June | 1, | 1929, | being bonds numbered | 133 to | 144, | " |
| 12,000 | due | June | 1, | 1930, | being bonds numbered | 145 to | 156, | " |
| 12,000 | due | June | 1, | 1931, | being bonds numbered | 157 to | 168, | " |
| 12,000 | due | June | 1, | 1932, | being bonds numbered | 169 to | 180, | " |

"SECTION 3. That said bonds and coupons shall be substantially as follows:

"UNITED STATES OF AMERICA,<br>
"STATE OF IDAHO,<br>
"CITY OF COEUR D'ALENE,<br>
"WATER BOND.

"No. ——                                       $1,000.

"Know all men by these presents that the City of Coeur d'Alene, in the County of Kootenai, State of Idaho, for value received hereby promises to pay the bearer on the 1st day of June, ——, the principal sum of $1,000.00 with interest thereon at 6% per annum, payable semi-annually on the 1st day of June, and December in each year, upon the presentation and surrender of the annexed interest coupons as they respectively mature. Both principal and interest of this bond are payable in gold coin of the United States of the present

standard of weight and fineness at the fiscal agency of the State of Idaho, in the City of New York.

"This bond and the interest thereon are payable solely from the fund created by Ordinance No. —— passed ———, providing for the monthly payment into the said fund from the revenues of said water works system, of the sum sufficient to pay principal and interest of the series of bonds of which this is one, as the same shall become due, and the City of Coeur d'Alene hereby covenants and agrees with the holders of this bond, and with each and every person who may become a holder thereof, that it will pay into said fund monthly from said revenues, a sum sufficient to pay such principal and interest at maturity, and will keep and perform all the covenants of said ordinance including its covenant against disposal of said water system or of any substantial part thereof unless provision shall be made for the payment of said series of bonds and interest, and its covenant that it will not reduce the water rate so that the revenue of said system shall be insufficient to pay all operating expenses and other charges, and the payments required by said ordinance, and its covenant to increase such rates whenever necessary in order to provide for the full payments stipulated in said ordinance.

"This bond is one of a series of 180 bonds of like amount and date, aggregating $180,000, issued for the purpose of acquiring the water works system with its appurtenances owned by the Consumers Company, Limited, and are issued in strict compliance with the Constitution and Laws of the State of Idaho, and the Charter of the City of Coeur d'Alene.

"It is hereby certified that all acts, conditions and things required by the laws and Constitution of the State of Idaho, to be done precedent to and in the issuance of this bond, have duly happened, been done and performed.

"IN WITNESS WHEREOF, said City of Coeur d'Alene has caused this bond to be signed by its Mayor and sealed with its corporate seal, attested by its Clerk, and counter-signed by its City Treasurer, and the coupons hereto annexed to be

signed with the lithographed signatures of said City Treasurer as of June 1, 1912.

_____,

"Mayor.

"Attest:

_____,

"City Clerk.
    "Countersigned,

_____,

"City Treasurer.

"COUPON.

"No.———

"On ———————, 19——,

"THE CITY OF COEUR D'ALENE, IDAHO,

"Will pay to the bearer, at the fiscal agency of the State of Idaho, in New York City, the sum of thirty dollars in gold coin of the United States of the present standard and fineness solely from a fund created from the revenues of the water works system of said city, as provided in, and for the semi-annual interest on its water bond dated June 1, 1912, and numbered ———.

_____,

"City Treasurer.

"SECTION 4. That the said bonds shall be signed by the Mayor and sealed with the seal of the City, and attested by the Clerk, countersigned by the City Treasurer, each coupon attached thereto shall be signed with the lithographed signature of the City Treasurer.

"SECTION 5. That upon the execution and delivery to the City of Coeur d'Alene of a proper conveyance of said water works system, free and clear of all liens and incumbrances, said bonds shall be delivered to said Eggleston & Company at par, and accrued interest in full payment for said water works system.

"SECTION 6. That there is hereby created a special fund to be known as 'Principal and Interest on Water Works Purchase Funds' into which fund there shall be set aside and

paid on the 20th day of the month next succeeding the date of the acquisition of said water works by the City, and on the 20th day of each month thereafter, until all of said bonds and the interest thereon shall have been paid, a sum equal to one-twelfth of the principal and interest on said bonds payable during the year ending on the 1st day of June following, which amount in the judgment of the Mayor and the City Council, will be available over and above the cost of the operation and maintenance of the said system. The said fund shall be used solely for the purpose of the payment of the principal and interest on the bonds herein authorized as the same fall due without preference or priority of one bond over another by reason of maturity, priority of issuance or otherwise.

"SECTION 7. The City of Coeur d'Alene covenants and agrees with the said holder or holders, as aforesaid, that at no time until all of said bonds and the interest thereon shall have been paid, will it reduce the rates demanded by it for water delivered to consumers, so that the gross revenues of said system after subtracting the cost of operation and maintenance and the amounts required for the payment of other charges against the revenues, shall be insufficient to make the payment into said fund herein above required and ordained, and that if at any time the gross revenues of said water works system shall not be sufficient to pay said costs of operating and maintenance, and the amounts required for the payment of such charges including the charge hereinabove created in favor of the bonds authorized, it will increase its rate to consumers to such figure as will be sufficient to provide for the payment of all such costs and charges.

"SECTION 8. It is covenanted and agreed by the City of Coeur d'Alene, in order to preserve the priority of the fund hereby created as a charge against the water revenue derived from said water works system, that the city will not create or permit to be created, so long as any of said bonds shall be outstanding and unpaid any indebtedness of any kind or character which shall be a charge or lien upon the revenues of said water works system.

"Section 9. All ordinances and parts of ordinances in conflict with this ordinance are hereby repealed."

Charles Feil, the appellant herein, thereupon commenced an action against the city of Coeur d'Alene and the officers thereof, including the mayor and council, praying for a decree declaring the ordinance invalid and void as conflicting with the state constitution, sec. 3, art. 8, and asking an injunction perpetually restraining the city authorities from issuing and selling the bonds provided for in the ordinance. After a hearing the district court denied the plaintiff any relief and he thereupon appealed.

One J. L. Robinson also commenced and prosecuted a like action praying the same relief, and a like judgment was entered in his case from which he has appealed. Both cases are here, and as the same questions are involved in both appeals, both appeals will be disposed of by this opinion.

AILSHIE, J. (After stating the facts.) It is alleged by the complainant and for the purposes of this action is admitted that the city of Coeur d'Alene was at the time of the passage of ordinance No. 380 indebted in the sum of $116,000, and that this indebtedness was and is in excess of the debt limitation prescribed by the constitution and statutes for cities of the class to which the city of Coeur d'Alene belongs. The decisive question to be determined upon this appeal is whether or not the bonds of the city of Coeur d'Alene in the sum of $180,000, the issuance of which is authorized by ordinance No. 380, are in violation of or in conflict with sec. 3, art. 8 of the state constitution. That section reads as follows:

"No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebted-

ness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same.   Any indebtedness or liability incurred contrary to this provision shall be void: *Provided,* That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state.''

Sec. 6, art. 8, of the constitution of the state of Washington, as adopted in 1889, provided, among other things, that ''No county, city, town, school district or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per centum of the taxable property in such county . . . . without the assent of three-fifths of the voters therein, voting at an election to be held for that purpose,'' etc.   (Vol. 7, Thorpe's American Charters and Constitutions, p. 3990.)

In the case of *Winston v. City of Spokane,* 12 Wash. 524, 41 Pac. 888, the supreme court of Washington was confronted with a very similar state of facts, and held that under the provisions of their constitution, sec. 6, art. 8, no *indebtedness* was incurred by such a transaction, and that the ordinance of the city of Spokane did not violate the provisions of the constitution.   The court divided on that question, three justices sustaining the validity of the ordinance and two dissenting therefrom.   The opinion is brief, and the vital part of it is as follows:

''For the purposes of this case, it must be conceded that said waterworks will, in addition to supplying the money for the creation of such fund, as provided for in said ordinance, pay all the expenses incident to their operation, and for that reason the creation of such special fund can occasion no liability upon the part of the city to make any payment out of its general funds.   This being so, we are of the opinion that neither the ordinance, the contract, nor the obligations to be issued by the city in pursuance thereof, do or will constitute a debt of the city, within the constitutional definition. The only obligation assumed on the part of the city is to pay out of the special fund, and it is in no manner otherwise

liable to the beneficiaries under the contract. The general credit of the city is in no manner pledged, except for the performance of its duty in the creation of such special fund.''

Since this decision was announced by the supreme court of Washington, in 1895, a number of very similar cases have arisen throughout the various states, and the opinions of the courts adhering to this view have invariably referred back to the Winston case and relied upon it as an authority, and so by citing that case and the various cases from other states that have followed the doctrine of that case, a line of authorities has been built up within the last fifteen years which tend to support the contention made by the respondent in this case and to sustain the validity of the ordinance here in question.

In 1902 the supreme court of Iowa in *Swanson v. Ottumwa,* 118 Iowa, 161, 91 N. W. 1048, 59 L. R. A. 620, followed and approved the doctrine of the Winston case and other similar cases, and held that a special tax levy running for a series of years for the purpose of paying for a municipal water system was not in violation of the provisions of sec. 3, art. 11, of their state constitution, which provides as follows: ''No county, or other political or municipal corporation, shall be allowed to become indebted, in any manner, or for any purpose, to an amount, in the aggregate, exceeding five *per centum* of the value of the taxable property within such county or corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness.'' (Vol. 2, Thorpe's American Charters and Constitutions, p. 1154.) The Swanson case was based upon the specious reasoning that where an obligation is incurred in anticipation of revenues yet to be collected which are to go into a *special fund* pledged to the payment of such obligation, *no debt is incurred,* although those revenues are to be collected for a long series of years in the future. ''Moneys the receipt of which is thus assured,'' says the court, ''are regarded as for all practical purposes already in the treasury, and contracts made upon the faith thereof are treated as cash transactions. No deficiency is created, and therefore no debt. In other words, so long as any particular fund has cash in

the treasury, or taxes which can be legally anticipated for its benefit, no appropriation thereof within the limits of such actual and prospective revenue will have the effect to create an indebtedness.''

We are aware that such a holding has frequently been made, and correctly so, too, we think, where the obligation or liability incurred anticipates the *revenues already provided for for that year,* and where the *revenues of the current* year will meet and liquidate the obligation. (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246.) Our constitution specifically prohibits anticipating the *income* or *revenue* for *more than the current year.* But the Iowa court clearly carried this principle to the limit and far beyond what other courts had done when it held that the same principle is applicable where the revenues have been anticipated for twenty-two years in advance and a sum of money has been raised for present expenditure to the aggregate sum of the anticipated revenue to be collected through such a series of years.

The case of *Swanson v. Ottumwa* was decided October 25, 1902. At the time the opinion in that case was filed the same question was pending in the United States circuit court of appeals for the eighth circuit in the case of *Ottumwa v. City Water Supply Co.,* 59 L. R. A. 604, 119 Fed. 315, 56 C. C. A. 219, and on the 26th of November, 1902, only thirty days subsequent to the filing of the opinion in the Swanson case, the circuit court of appeals filed its opinion reaching a contrary conclusion, and in course of that opinion Judge Lochren took occasion to criticise the opinion of the supreme court in *Swanson v. Ottumwa,* and among other things said:

''We have examined carefully the opinion in *Swanson v. Ottumwa* and the cases which are supposed to give support to its conclusions. It will not be profitable to review in detail the reasoning employed to reach the result arrived at. To our minds it is not persuasive, and we decline to be guided by it. Its citations exhibit the unceasing attempts in that state and some others to nullify and evade wholesome constitutional limitations upon the power of municipalities to create indebtedness, and thus place intolerable burdens on

·the taxpayers; and its reasoning but adopts the ingenious, but obviously untenable, arguments by which such attempts have ever been supported. In the case of *Swanson v. Ottumwa,* the supreme court of Iowa holds, in accord with the contention of the appellant in this case, that the city of Ottumwa, though already indebted beyond the constitutional limit, may now borrow $400,000 to construct waterworks, by the issue and sale of its negotiable, interest-bearing bonds to that amount, to be paid by taxation on the taxable property of the city collectible year by year for fifty years; and that the city will not thereby create any indebtedness if, at or before the issuing of such bonds, it levies, once for all, this continuous yearly tax, and bargains with the bondholders that the bonds are to be paid only from the fund which shall be produced or accumulated from the proceeds of this continuous yearly tax, with a vague possibility of re-enforcement from a surplus of water rentals over and above the cost of operating, maintaining, and extending the waterworks."

· And again in considering the terms, provisions and requirements of the ordinance of the city of Ottumwa, Judge Lochren said:

"Said ordinances further provide that no part of the cost of said waterworks, or any of the bonds issued therefor, shall ever be paid out of the general funds of said city, or out of any fund or the proceeds of any tax other than the property and funds specifically named; and that such provision and limitation shall be recited in the bonds; and hence it is argued that the transaction will not create any indebtedness on the part of the city, but that the money borrowed by the city from the purchasers of the bonds will be only an anticipation by the city, for its present use, of specific revenues which it has provided for, to accrue in the future. This contention of the appellant is based upon a palpable jugglery of·phrases, and cannot be maintained. If it can, the constitutional provision above quoted, which prohibits any municipality from becoming indebted beyond the specified limit 'in any manner or for any purpose' is delusive, and of no avail to protect taxpayers."

After giving some very apt illustrations of the practical application of the doctrine contended for, the court said: "If this may be done to build waterworks, the city may go on, and in the same way borrow and issue its bonds for an equal amount to build public buildings, and for another equal amount to construct a system of sewers, and for another equal amount to construct modern schoolhouses, and an unlimited amount as bonus to some railroad, taking care in each case to levy once for all a sufficient annual tax to meet the maturing bonds; and, though the property of the taxpayers may be thus practically confiscated, by being loaded down with taxes beyond any income which the property can produce, and for periods beyond any expectation of life which the taxpayers can indulge in, still those taxpayers, while groaning under such special levies, fixed upon them and extending hopelessly into the future, will have the happiness and satisfaction of knowing that they live in a city which has no municipal indebtedness large enough to cause uneasiness."

In the note to the case of *Ottumwa v. Water Supply Co.,* at p. 604, 59 L. R. A., the annotator says: "*Swanson v. Ottumwa* well illustrates the result when the effort on the part of the courts to encourage municipal improvement in the face of constitutional restrictions is carried to its logical conclusion. Stripped of subterfuges, that decision permits a municipality, which is already indebted beyond the constitutional limit, to impose an additional indebtedness of $400,000 upon its taxpayers by making a distinction between the taxpayers in their organized capacity and the same persons as individuals. This may be a valid distinction when applied to business corporations, but it hardly seems to be so with respect to municipal corporations."

In 1903 a kindred question arose in the case of *Brockenbrough v. Board of Water Commrs.,* 134 N. C. 1, 46 S. E. 28, and the supreme court of North Carolina was called upon to determine the validity of certain statutes of that state when construed in the light of the provisions of their state constitution as embodied in sec. 7, art. 7, thereof. The court con-

cluded that no *indebtedness* was incurred in violation of the constitution. The North Carolina constitution there under consideration reads as follows: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein." (Vol. 5, Thorpe's American Charters and Constitutions, p. 2837.)

In *Connor v. City of Marshfield,* 128 Wis. 280, 107 N. W. 639, the supreme court of Wisconsin approved the doctrine announced in the Winston case and cited with approval a number of cases that have held to the same rule.

The foregoing are the leading authorities supporting the contention made by the city in support of its ordinance No. 380, and they will suffice to show the views taken by the courts of states having somewhat similar constitutional provisions to those found in our own constitution. A contrary view was taken by the supreme court of Illinois in *City of Joliet v. Alexander,* 194 Ill. 457, 62 N. E. 861, in construing sec. 12, art. 9, of the Illinois constitution. (Vol. 2, Thorpe's American Charters and Constitutions, p. 1037.) The Illinois constitution provides, *inter alia,* as follows: "No . . . . city . . . . shall be allowed to become indebted in any manner, or for any purpose, to an amount, excluding existing indebtedness, in the aggregate exceeding five *per centum* on the value of the taxable property therein," etc. An analysis and comparison of the constitutional provisions above quoted will at once disclose, however, that none of them were so sweeping and prohibitive in their terms as sec. 3. art. 8, of our constitution above quoted. We shall not take the time or space here to draw the comparison and analyze the differences existing between those constitutional provisions and our own, but will rather content ourselves with a brief anaylsis of our own constitutional provision and point out what seems to us the peculiar and decisive provisions of our own constitution which should be held as conclusive in this case.

Our constitution was framed and adopted in 1889, and prior to the rendition of any of the decisions above referred to and before such a doctrine had been generally promulgated. Notwithstanding these facts, the framers of our constitution employed more sweeping and prohibitive language in framing sec. 3 of art. 8, and pronounced a more positive prohibition against excessive indebtedness than is to be found in any other constitution to which our attention has been directed. It says: "No . . . . city . . . . shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof," etc. The constitution not only prohibits incurring any *indebtedness,* but it also prohibits incurring any *liability* "in any manner or for any purpose," exceeding the yearly income and revenue. In this connection, it should also be observed that it not merely prohibits incurring any *indebtedness or liability* exceeding the *revenue* of the current year, but it also prohibits incurring any indebtedness or liability exceeding the *income and revenue* provided for such year. When the framers of the constitution were drafting this provision, they engaged in some discussion over the language used, and certain members attempted to strike out the words "income and revenue provided for it" and insert instead thereof the words "usual and necessary expenses." This attempt was defeated, and in course of the debate attention was called to the fact that the word "income" was used in order that the provision might cover all sources and kinds of income or revenue, and that this word had particular reference to such sources of income as licenses and income other than that derived from regular taxation. An attempt was also made to except certain expenses from the operation of this section, and that effort was likewise defeated. (See Proceedings Constitutional Convention, vol. 1, pp. 590, 593.)

The courts to whose decisions we have above referred have indulged in various subtleties and refinements of reasoning to show that no *debt* or *indebtedness* is incurred where a municipality buys certain property and specifically provides

that no liability shall be incurred on the part of the city, but that the property shall be paid for out of a *special fund* to be raised from the income and revenue from such property. The reasoning, however, of those cases utterly fails when applied to our constitution, for the reason that none of those cases deals with the word "liability," which is used in our constitution, and which is a much more sweeping and comprehensive term than the word "indebtedness"; nor are the words "in any manner or for any purpose" given any special attention by the courts in the foregoing cases. The framers of our constitution were not content to say that no city shall incur any indebtedness "in any manner or for any purpose," but they rather preferred to say that no city shall incur any *indebtedness or liability* in any manner, or for any purpose. It must be clear to the ordinary mind on reading this language that the framers of the constitution meant to cover all kinds and character of debts and obligations for which a city may become bound, and to preclude circuitous and evasive methods of incurring debts and obligations to be met by the city or its inhabitants.

Bouvier in his Law Dictionary defines the word "liability" as follows: "Responsibility; the state of one who is bound in law and justice to do something which may be enforced by action. This liability may arise from contracts either express or implied, or in consequence of torts committed. The state of being bound or obliged in law or justice." And in support of the foregoing definition, he cites the following authorities: *McElfresh v. Kirkendall,* 36 Iowa, 226; *Wood v. Currey,* 57 Cal. 209; and *Joslin v. New Jersey Car Spring Co.,* 36 N. J. L. 145. Anderson in his Law Dictionary defines the word "liability" as follows: "The state of being bound or obliged in law or justice to do, pay, or make good something; legal responsibility." The latest edition of the Standard Dictionary defines "liability" as "The condition of being responsible for a possible or actual loss, penalty, evil, expense or burden." The supreme court of California, in *Pillar v. Southern Pacific R. Co.,* 52 Cal. 42, approved the foregoing definition from Bouvier.

Now, let us turn to the provision of the ordinance in this case and ascertain, if we can, what the city proposes to do by its ordinance No. 380. In the first place, the title says that it is "An ordinance providing for the purchase by the city of Coeur d'Alene of the waterworks system now owned by the Consumers Company, Limited, in the city of Coeur d'Alene, together with all pipes, etc." Sec. 1 provides that "the mayor and city council be, and they are hereby authorized to enter into a contract with the said Eggleston & Co. for the purchase of said water plant, with all appurtenances," etc. Now, the question arises, Who is going to purchase this? and the answer is inevitable that it is the city that is going to purchase it. But it is said that the city is not going to pay for it; that somebody else is going to pay for it. If the city has any right to obligate *anyone other than the city* to pay for this water system, then the contention made that there is no city obligation may be true. But when we turn to the constitution, we find that it does not merely prohibit the city from incurring any *municipal* indebtedness or liability, but it prohibits it incurring *any* indebtedness or liability. Now, if the city has the power to obligate the water consumers to pay for this system or to obligate any specific property to pay for it, or any particular class of citizens to pay for it, then it is prohibited as much by sec. 3, art. 8, of the constitution from *incurring such indebtedness or liability* as if it were a *city* indebtedness or liability, because the constitution says it "shall not incur any indebtedness or liability" exceeding a certain limitation without at the same time levying an annual tax to meet such obligation and submitting the question to a vote of the people.

Passing now to the further provisions of the ordinance, we find that sec. 2 provides that there shall "be issued the bonds of the city of Coeur d'Alene, in the aggregate amount of $180,000," bearing interest at six per cent per annum. Now, the question is: Whose bonds are these? Are they city bonds or are they the bonds of some unknown and undetermined water consumers who may and will change from month to month? But we find further that these bonds will run for

the period of twenty years. Sec. 3 provides the form of the bond. Among other things, it says: "Know all men by these presents, that the city of Coeur d'Alene, in the county of Kootenai, state of Idaho, for value received, hereby promises to pay the bearer on the first day of June, ——, the principal sum of $1,000 with interest thereon at 6% per annum," etc. The bond further provides:

"This bond and the interest thereon are payable solely from the fund created by Ordinance No. 380, passed ——, providing for the monthly payment into the said fund from the revenues of said waterworks system, of the sum sufficient to pay principal and interest of the series of bonds of which this is one, as the same shall become due, and the city of Coeur d'Alene hereby covenants and agrees with the holders of this bond, and with each and every person who may become the holder thereof, that it will pay into said fund monthly from said revenues, a sum sufficient to pay such principal and interest at maturity, and will keep and perform all the covenants of said ordinance including its covenant against disposal of said water system or of any substantial part thereof, unless provision shall be made for the payment of said series of bonds and interest, and its covenant that it will not reduce the water rate so that the revenue of said system shall be insufficient to pay all operating expenses and other charges, and the payments required by said ordinance, and its covenant to increase such rates whenever necessary in order to provide for the full payments stipulated in said ordinance."

Now, suppose it be admitted that no *indebtedness* is incurred by this ordinance, is there not clearly a *liability* incurred within the clear and unmistakable meaning of that word as defined by the foregoing authorities? Does the city not pledge itself to so conduct this water system and charge and collect revenues therefrom sufficient to pay the principal and interest on this obligation, and that it will pay such revenue into this *special fund* created for the purpose, and that it will not only do this, but that if the rates now charged are insufficient to raise such revenue, it will raise the rates,

however high they may be, until they are sufficient to meet this obligation and liability and discharge the same? If the debt is not the city's debt, does the city not become surety or guarantor for the payment of the debt? Is not there some legal *liability* created by the provisions of this ordinance? When the city agreed to purchase this water system, it certainly was intended that somebody should pay for the system. It was not a gift and certainly it was not the intention of the city to defraud the vendors out of this property. The vendors expect to receive payment from somebody, and the city expects that somebody will pay for this, and it *obligates itself to raise a revenue from this property* sufficient to pay the debt with interest within the period of twenty years. Not only this, but it covenants with the vendor that it will not sell or dispose of the property or in any way encumber it until this debt is paid. This clearly implies, and was evidently intended to be understood, that the vendors of the property should retain a vendor's lien on the property, under the statute, for the payment of the purchase price. This, too, is a *liability.* Suppose, now, after purchasing this property, another city council hereafter to be elected should decline to comply with the promises, agreements and covenants of this ordinance. If the ordinance is legal and valid, would not the courts intervene to compel the city authorities to comply with the provisions and terms of this ordinance and to take such steps as might be necessary to raise the required revenue to meet these obligations, and would the courts not also restrain and enjoin the city from encumbering or disposing of the property until such time as these obligations are discharged? But the obligation which the city assumes to maintain the present water rates or, if necessary, raise them sufficiently to raise the required amount of money, is clearly *ultra vires* and an obligation which the city could not perform or discharge. It is admitted by counsel that the moment the city purchases this water system and begins to operate it and sell water to water consumers and charge rates therefor, that it will be subject to the same rules and regulations under the constitution and statute for fixing reasonable rates as are

applicable to individuals and private corporations, and this
is clearly the law. (Farnham on Waters and Water Rights,
sec. 162; *Eaton v. City of Weiser*, 12 Ida. 544, 86 Pac. 541,
118 Am. St. 225; *Twitchell v. City of Spokane*, 55 Wash. 86,
104 Pac. 150, 133 Am. St. 1027, 24 L. R. A., N. S., 290.) Then
they would be confronted with the provisions of secs. 1, 2, and
6, of art. 15, of the state constitution, requiring water rates
to be reasonable, and that those rates shall be established and
fixed *in the manner prescribed by the legislature.* The city
would have no more right than an individual or private cor-
poration to charge unreasonable or excessive rates to its in-
habitants, nor would it have the right to fix these rates itself.
In this case, we are notified in the very first instance by this
ordinance that the city proposes within a period of twenty
years to raise from the water consumers of Coeur d'Alene
city by water rates a sufficient sum to pay for all running ex-
penses, all repairs and improvements, and the purchase price
for this entire system, and interest thereon at six per cent
per annum. In the meanwhile, the city must have water for
municipal purposes, such as fire protection and flushing sewers,
washing streets, and general municipal purposes. The city
is going to either make its inhabitants and water consumers
pay by excessive rates for this municipal purpose, so that
water for *city purposes* may be free, or else the city is itself
going to pay rates into this fund which goes to meet the run-
ning expenses and pay the purchase price. In the face of all
these things, the vendor of the property will come in and take
its property back after large sums have been paid, if the city
should fail or refuse to continue the payments or its inhab-
itants should cease to patronize the water system and pay
sufficient rates to meet this continuing obligation and liability.

Courts have frequently passed upon the question as to what
are reasonable water rates and the rate of interest which a
water company is entitled to net on its investment. We know
of no case anywhere that has ever held that a rate of interest
would be reasonable which is sufficiently high that it will
enable the owner of the property *to pay running expenses,
keep up repairs, pay interest at 6% on the total investment,*

*and also at the same time pay the principal sum invested within a period of twenty years.* This would mean to pay all operating expenses and repairs and repayment to the purchaser within twenty years of the entire principal and 120 per cent net profit in that period of time. This statement of itself shows that it is impossible for the city to keep within the provisions of the constitution and statute in charging reasonable rates and still comply with its ordinance No. 380 in raising sufficient revenue from this water system to pay the debt within the term of the ordinance.

The city proposes by the ordinance No. 380 to purchase a water system and to become the owner thereof. It proposes, on the other hand, to make those who use water from this water system, the purchasers of water, pay for the waterworks system. The persons who are to pay for the system, however, will not be the owners when final payment is made. The property of the municipality is not taxed and no specific property is pledged. The citizens, as a whole, or as a class, are not taxed. So far as the municipality is concerned, it is to either have the free use of the water for municipal purposes or else it must levy a tax sufficient to raise revenue to pay its proportion into this fund. It certainly is not going to pay itself for the use of its own property, nor can it levy a tax for the purpose of paying into the city treasury rentals for the use of municipal property. If it contributes anything to this fund, it will necessarily have to levy a tax annually for the purpose of raising sufficient revenue to pay its proportionate share or reasonable rate in contributing to this common fund that is to be used to purchase this property. At this juncture, however, the city will be confronted with another serious problem. When it engages in public ownership of a water system and sells water and charges rates to individual consumers, the receipts from this source will at once become an *income,* under the provisions of sec. 3, art. 8, of the constitution, which it is forbidden to pledge or hypothecate for more than the current year, and yet it is *hypothecating that income for twenty years.* In other words, it purchases a property which, in the ordinary course of business,

would produce a *revenue or income* to the city. As soon as these rentals are collected, they will belong to the city, and the fund, whether it be a *general* or a "special fund," will belong to the city and be city or municipal property.

As said by the supreme court of Illinois in *City of Joliet v. Alexander,* 194 Ill. 464, 62 N. E. 863, "It does not make any difference that the certificates (bonds) are payable out of the special fund, if the city is the owner of the fund. All its obligations are payable out of some particular fund. . . . . The section of the constitution limiting indebtedness provides that at the time of incurring any indebtedness the city shall provide for the collection of a direct annual tax sufficient to pay the interest on the debt as it falls due, and to pay and discharge the principal within twenty years from the time of contracting the debt, and every indebtedness is payable from some particular fund."

After it owns that property, the receipts from water rents would clearly be an *income or revenue* within the purview and meaning of the constitution, but in advance of the purchase it undertakes to appropriate and hypothecate that *income* for a period of twenty years so that it may not be an *income* after the purchase is made. This is mere jugglery with words. This revenue will be no less an income after this transaction is consummated than it would have been had the city bought and paid for the property at the time. If this method can be pursued for purchasing a waterworks system, the same method could be pursued in purchasing an electric light and power plant, and a similar method might be adopted for the purchase of a telephone system within the municipality, and so also a street railway, and there will be no limit either to the power of purchase and acquisition or to the power of the city council to incur indebtedness upon the prospective consumers or patrons, as the case may be. The *consumer,* not the taxpayer, may well sigh at the mere statement of the possibilities of such a proposition carried to its natural conclusion and lose himself in contemplating the cost of water, light, telephone and transportation when the *consumer alone* is paying for those public utilities.

Most subtle and dangerous of all is the method pursued for raising the revenue to meet the obligation. This is to fall not upon the *property* of the municipality or the *property owner* but on the *consumer*,—the man who rents a house and must necessarily have water for domestic use. He must pay rates so high that the net income from such rate will enable the city in twenty years to pay for the entire system and in the meanwhile operate it and keep it in repair. In the meanwhile, the *property owners* have had the protection which a water system affords against fire and an improved sanitation, and at the same time the taxable property of the city and the property owner has been allowed to escape taxation for this purpose. Such a proposition is clearly repugnant to the constitution, and at the same time shocks the sense of justice and municipal honesty and integrity. But the constitution says that before such an indebtedness is incurred which exceeds the income and revenue for the current year, it must be submitted to a vote of the people and be authorized by two-thirds of the qualified electors. The allegations of the complaint in this case demonstrate the wisdom and importance of that provision and qualification contained in the constitution. It is alleged here, and for the purposes of this case is admitted, that about two years ago the question of purchasing this system for $134,000 was submitted to a vote of the people and was by the electors rejected. After this expression of the will of the people, the city council determines by ordinance No. 380 to adopt the present method of purchasing this system without consulting the people or submitting the question to their vote, and to pay $180,000 for the same property, or an advance of $46,000 over the proposition rejected by the voters of the city.

Finally, it has been urged by counsel for the city that the principle involved in this method of purchase has been in substance approved by this court in *McGilvery v. City of Lewiston,* 13 Ida. 338, 90 Pac. 348, and *Blackwell v. Coeur d'Alene,* 13 Ida. 357, 90 Pac. 353, wherein this court approved the statute authorizing the levy of special assessments upon the property to be benefited in sewer districts for the purposes

of building sewers. Courts have generally upheld statutes and city charters authorizing the creation of improvement and sewer districts and the levying of assessments on abutting property for the purpose of paying for the same. To our minds, the assessment and improvement district law is a very different thing from the problem with which we are here confronted. There the *property* assessed receives a direct and special benefit, and the property receiving that benefit is assessed for the payment thereof. (*City of Joliet v. Alexander,* 194 Ill. 457, 62 N. E. 861.) The assessment in such case is not made against some uncertain, indefinite and unidentified *person* who may from time to time occupy the premises abutting upon the improvement, and we apprehend that if such a method were pursued in order to pay for a sewer system, that it would meet with the prompt disapproval of the courts. In those cases, however, the bondholder is given a lien on the property benefited, and may foreclose that lien without the intervention of the city. (*Blackwell v. Village of Coeur d'Alene,* 13 Ida. 357, 90 Pac. 353.) The similarity between the two classes of cases is certainly very slight, and the rule of special assessments should not and, in our judgment, cannot be applied in a case of this kind. (*City of Joliet v. Alexander,* 194 Ill. 457, 62 N. E. 861.)

This particular question has never before been passed upon in this state, and we have therefore felt it our duty to closely examine and construe our own constitution rather than follow blindly and complacently the decisions of the courts of other states. To us the constitution seems plain and clear, and it is our duty to follow its mandates. If it is to be amended, the amendment should come from the people in the constitutional manner and not by way of judicial construction. Courts should declare the meaning and intent of the constitution, and enjoin its observance as far as is possible, but it is no part of the duty of a court to declare or attempt to enforce what it thinks the constitution *ought to be* if in fact it says something else.

We conclude that ordinance No. 380 of the city of Coeur d'Alene is repugnant to sec. 3, art. 8, of the constitution, and

that the bond issue proposed by that ordinance would create a "liability" against the city. The judgment is reversed and the cause is remanded, with direction to grant a perpetual injunction as prayed for by the complaint. Costs awarded in favor of appellant.

Sullivan, J., concurs.

STEWART, C. J., Dissenting.—I cannot agree to the conclusion of the majority opinion, that ordinance No. 380 creates any indebtedness upon Coeur d'Alene City, within the meaning of sec. 3, art. 8 of the constitution. Neither do I agree with the conclusion announced in the majority opinion that the reasoning of the supreme court of Washington in *Winston v. City of Spokane,* 12 Wash. 524, 41 Pac. 888, the supreme court of Iowa, in *Swanson v. Ottumwa,* 118 Iowa, 161, 91 N. W. 1048, 59 L. R. A. 620, the supreme court of North Carolina in *Brockenbrough v. Board of Water Commissioners,* 134 N. C. 1, 46 S. E. 28, and the supreme court of Washington in *Connor v. City of Marshfield,* 128 Wis. 280, 107 N. W. 639, is not in accord with the language of the constitutions of the respective states. These cases, in my judgment, were dealing with constitutional provisions identical in meaning with the constitution of this state, and correctly state the intent of the makers of the constitution in each state where such questions have been decided. They are the only cases where courts have been called upon to pass upon the constitutionality of a transaction entered into by a municipality through its ordinances similar to that involved in this action, except the case of *Ottumwa v. City Water Supply Co.,* 59 L. R. A. 607, 119 Fed. 315, 56 C. C. A. 219. This decision was by the circuit court of appeals of the eighth circuit, and, in my judgment, should not be accepted as authority in this state rather than the decision of the highest court of each of said states where such questions have been directly passed upon. The federal court imagines conditions which in its opinion would create a possible indebtedness, but in my opinion they have no application to the probabilities arising under such conditions.

There is nothing in ordinance No. 380 which in any way provides for a municipal indebtedness or liability in excess of the constitutional inhibition. No tax is assessed against the property within the municipality, and the city has in no way promised to pay from the general fund of the city, or out of any tax levied by the city in any one year, or any number of years, but, on the contrary, it is clearly provided that payment is to be made only and wholly from the income of the water system arising from the fund accruing for the use of water, and that such fund shall be applied to the maintenance of the system and the payment of the purchase price, and with permission for the city to regulate the water rates at such sum as to raise such fund. This method of paying for the waterworks. is neither a debt nor a liability; the obligation that the city undertakes is that it will collect and turn over to the bondholders, out of the income from a charge for water, the amount due under the contract.

In the Washington case, the court of that state construed sec. 6, art. 8 of the state constitution, in which this language is used: "No county, city, town, school district or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding one and one-half per cent of the taxable property in such county . . . . without the assent of three-fifths of the voters therein." It will be seen by this provision of the constitution that the court was considering the question of incurring an indebtedness.

In the Iowa case of *Swanson v. Ottumwa*, the supreme court of Iowa was construing the following language: "No city, county or other political or municipal corporation, shall be allowed to become indebted, in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per cent of the value of taxable property," etc., and from this language it clearly appears that the court in that state in the above cited case was dealing solely with the question of incurring an indebtedness.

In the North Carolina case, the supreme court of that state was construing the following language: "No county, city, town or other municipal corporation shall contract any debt,

pledge its faith or loan its credit, nor shall any tax be levied nor collected by any officer of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified electors therein." It clearly appears that the court was dealing with the question of indebtedness.

The same may be said of the case of *Connor v. City of Marshfield,* 128 Wis. 280, 107 N. W. 639, and the cases cited therein. The question the court was passing upon in these cases was whether a municipal indebtedness was created by the action of the municipality, and whether the city became bound by any promise to pay a debt by reason of the transaction made. So in the opinions disapproved in the majority opinion, the courts were dealing solely with the question of indebtedness, and with the question as to whether or not by such transactions the municipalities were assuming liabilities in the performance of acts and obligations of the municipality which in no way amounted to a municipal indebtedness. Comparing the constitutions of the states referred to in the foregoing opinions, it will be observed that none of such constitutions contained the exact language found in the constitution of this state. This section of the constitution in its prohibition not only is against the incurring of any indebtedness, but it is also an inhibition against the creation of any liability in any manner or for any purpose, without a vote of the electors.

The constitution provides that "No . . . . city . . . . shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose; nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void. . . . . "

While the majority opinion seems to hold that the *incurring of an indebtedness* and the *creation of a liability in any manner* have a different meaning, as used in this provision of the constitution, yet when the entire section is taken together, it will be seen that the inhibition of an indebtedness as provided in the section is in the incurring of an *indebtedness* or *liability* without a vote of two-thirds of the qualified electors, and that "before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund." Thus the inhibition applies both to the incurring of an indebtedness and the creation of a liability, in the sense that both the indebtedness and liability is the making of an obligation which requires the raising of revenue by taxation by the municipality upon the property of the municipality for the payment of the same. The section, taken as a whole, shows clearly that the words "indebtedness" and "liability" are used in the same sense, in so far as the prohibition applies, and there is, in my opinion, no justification for the contention that a liability is any different from an indebtedness, or any more comprehensive, or has any different meaning as used in the section in the application of the inhibition contained in the section.

Sec. 2315 of the Rev. Codes, which provides that every city or town incorporated under the laws of the state shall have power and authority to issue municipal bonds not to exceed at any time in the aggregate fifteen per cent of the real estate value of said city, "to provide for the construction and maintenance of necessary waterworks and supplying the same with water," has relation only to municipal bonds that are a charge against the city, and has no application whatever to bonds issued for the purpose of and in accordance with the provisions of ordinance No. 380; neither does it apply to bonds issued by a city for special improvements or to any bonds that are payable out of a special fund created by special payments, or payable out of a special fund created out of the receipts of waterworks purchased under a contract that the same shall be paid for from the receipts received by the city from the use

of the water from such system. This section of the statute has reference to a general indebtedness of the city, and was intended to carry into effect sec. 3, art. 8 of the constitution. (*McGilvery v. City of Lewiston,* 13 Ida. 338, 90 Pac. 338; *Blackwell v. Village of Coeur d'Alene,* 13 Ida. 357, 90 Pac. 353.) The fact that the ordinance provides that the city may have the power "if at any time the gross revenues of said waterworks system shall not be sufficient to pay said cost of operating and maintenance, and the amounts required for the payment of such charges including the charge hereinabove created in favor of the bonds authorized, it will increase its, rate to consumers to such figure as will be sufficient to provide the payment of all such costs and charges," can in no way affect or annul the laws of the state granting to a city the power to regulate the water rates within a municipality at a reasonable rate, and the purchaser of such bonds is advised of that fact when said bonds are purchased, and in accepting the bonds, accepts them with the knowledge that under the laws under which such bonds have been issued, such bonds are to be paid only from the revenue derived from the system, and that the rates fixed by the city are required to be reasonable.

Just what is a reasonable rate depends primarily upon the cost of production, and a fair rate thereon being recognized as the operating expenses, maintenance and depreciation, all of which are legitimate expenses, and which the system must bear whether the ownership be in the municipality or a private corporation or individual, and the bond purchaser accepts such bonds at his peril, and has full knowledge that the law requires that the rates to be charged for water are to be reasonable, and if the bonds are issued to an excessive amount, and the revenue derived from the water rentals fixed at a reasonable rate is insufficient to meet the payments, the bondholder assumes such liability and not the city. So there is no indebtedness or other liability which the city will incur which in any way would require the raising of any funds for the purpose of making any payments by reason of the transaction entered into, by the authority of said ordi-

nance. The fact that the city of Coeur d'Alene is to become the owner of said water system, and agrees to fix the rates to be charged for the use of water from the system and to pay the same upon the bonded indebtedness out of a fund arising from the revenue received for the service of water, is not an indebtedness or obligation which adds to or requires the raising of revenue from assessment upon the property of the municipality during each year or for any number of years, or at all, and the general credit of the city is in no way pledged, except the duty to create the fund, and does not bring the transaction involved in this case within the inhibition provided by sec. 3, art. 8 of the constitution.

For these reasons I dissent from the majority opinion, both in the theory and reasoning of the opinion, and in the conclusion.

### ON REHEARING.

(February 5, 1913.)

AILSHIE, C. J.—Upon petition of respondent a rehearing was granted in this case, and the whole question has again received oral argument.

Two propositions have been dwelt upon by counsel at considerable length: First, that the original opinion of this court is contrary to the weight of American authority; and, second, that it runs counter to the interest of the people of the municipality.

With reference to the first proposition, it may be suggested that the decisions relied on by respondent are not all in point, for the reason that they rest on constitutional provisions differing materially from ours. We pointed out in the original opinion what to our minds should be controlling and the reasons for our holding, as well as our views of the intent and purpose of the framers of our constitution. We are still fully persuaded that the ordinance here in question is an evasion of the provisions of the constitution, and that to sustain it would be running counter to the intent and purpose of the framers of the constitution and the people of the

state when they adopted that instrument. It can serve no useful purpose for us to enter upon a further discussion of those provisions here. The legislature is now in session, and if the construction this court has placed upon sec. 3 of art. 8 of our state constitution does not meet with the approval of the representatives of the people in the law-making branch of the state government, or if for any reason they think it proper to submit the question to a vote of the people, they may do so at once, and get an expression of the people themselves as to whether the constitution should be so amended as to cover and include a case such as the one here presented.

As to the contention that this construction runs counter to the interests of the people of the municipality, it is not out of place to again call attention to the fact that the question of purchasing this water system was once submitted to the people of Coeur d'Alene city and was by them voted down. It hardly seems to us that the people themselves after voting against the purchase of this water system are now willing that the city council should make the same purchase at an additional price of some $40,000, without in any manner submitting the question to those who must pay the bill. If the people interested in this matter and upon whom the burden of paying the purchase price must fall are to have the right to express their views on the matter, it is just as important that they express such views in the one instance as in the other.

We find no reason for changing or modifying the opinion of the court as originally announced in this case. The original opinion will stand as the judgment of the court.

Sullivan, J., concurs.

Stewart, J., dissents.